# CHENEY BROTHERS COMPANY ET AL. *v.* COMMONWEALTH OF MASSACHUSETTS.

### ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

No. 12.    Argued April 20, 1916; restored to docket for reargument May 21, 1917; reargued October 19, 1917.—Decided March 4, 1918.

Massachusetts Stats., 1909, c. 490, Pt. III, § 56, imposed an annual excise upon every foreign corporation, for the privilege of doing local business, of 1/50 of 1% of the par value of its authorized capital stock, subject, however, to a maximum limit of $2,000.00. *Held,* valid, as applied to corporations doing local as well as interstate business, upon the authority of *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68. *International Paper Co.* v. *Massachusetts, ante,* 135, distinguished.

The following activities are *held* to constitute local business, affording bases for the tax:

1. Keeping up a stock of repair parts at a place of business, and supplying and selling them, in part locally, to users of machines made by the corporation in another State and sold in interstate commerce.    Case of *Lanston Monotype Co.*

2. Repairing automobiles made in another State and disposed of in interstate commerce, and selling second-hand automobiles taken in exchange for new ones so disposed of. Case of *Locomobile Co. of America.*

3. Where a corporation, to promote local trade in its product manufactured in another State and sold in interstate commerce to wholesalers, maintained a local office with agents who solicited orders from local retailers and turned them over to local wholesalers, who filled them and were paid by the retailers. Case of *Northwestern Consolidated Milling Co.*

4. Where a holding company had an office in the taxing State, pursuant to its articles, where it held stockholders' and directors' meetings, kept corporate records and accounts, received and deposited in bank regular dividends, and paid the money, less salaries and expenses, regularly as dividends to its stockholders. Case of *Copper Range Co.*

5. Maintaining a local office, pursuant to corporate articles, where proceeds of operations in another State are received, deposited locally, distributed to shareholders, less salaries and expenses, and where directors hold their regular meetings, elect officers and manage the general business of the corporation. Case of *Champion Copper Co.*

The fact that a local business stimulates interstate business and that its abandonment would have the opposite effect, does not make it any the less local. Case of *Locomobile Co. of America.*

Where a foreign corporation maintains and employs a local office, with a stock of samples and a force of office and traveling salesmen, merely to obtain orders locally and in other States, subject to approval by its home office, for its goods to be shipped directly to the customers from its home State, the business is part of its interstate commerce and not subject to local excise taxation. Case of *Cheney Brothers Co.* And the action of such office in obtaining orders from customers residing in the home State of the corporation and in transmitting them to the home State where they are approved and filled, is interstate intercourse, not local business in the State where the office is established. *Id.*

A State may impose a different rate of taxation upon foreign corporations for the privilege of doing local business than it imposes upon the primary franchises of its own corporations; and, by merely permitting or licensing a foreign corporation to engage in local business and acquire local property, it does not surrender or abridge, *quoad*

such corporation, its power to change and revise its taxing system and tax rates. Hence, where a foreign corporation acquired real property and specially improved it at large cost, but still the property was such that the investment might be retrieved if need be, *held*, that a subsequent increase in its excise without corresponding change in the tax bearing on domestic corporations would not deny it the equal protection of the laws. *Southern Ry. Co.* v. *Greene*, 216 U. S. 400, distinguished.   Case of *White Co.*
218 Massachusetts, 558, reversed in part and affirmed in part.

THE case is stated in the opinion.

*Mr. Charles A. Snow*, with whom *Mr. William P. Everts* was on the briefs, for plaintiffs in error:

A "fluctuating" percentage excise measured by the entire capital stock of a foreign corporation engaged in transacting interstate and domestic commerce at the same places and through the same instrumentalities, is unconstitutional under the commerce clause and void, although it professes to be imposed exclusively for the privilege of transacting local business. *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1; *Pullman Co.* v. *Kansas*, 216 U. S. 56; *Ludwig* v. *Western Union Telegraph Co.*, 216 U. S. 146; *Western Union Telegraph Co.* v. *Andrews*, 216 U. S. 165; *Atchison, Topeka & Santa Fe Ry. Co.* v. *O'Connor*, 223 U. S. 280; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 163; *Oklahoma* v. *Wells, Fargo & Co.*, 223 U. S. 298; *Kansas City &c. R. R. Co.* v. *Stiles*, 242 U. S. 111; *Pick & Co.* v. *Jordan*, 169 California, 1, 244 U. S. 647; *Crane Co.* v. *Looney*, 218 Fed. Rep. 260.

The principles of the *Western Union Cases* were not confined to *quasi*-public corporations, but extended broadly to all classes of trading corporations conducting conjointly both interstate and domestic commerce at the same places and through the same instrumentalities. *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, 86; *Kansas City &c. Ry. Co.* v. *Kansas*, 240 U. S. 227, 234, 235.   They did not decide that only indispensable and

inseparable incidents to interstate commerce are protected; nor that such an excise is constitutional if the company may voluntarily abandon its local business without serious damage to its interstate commerce; nor that a direct burden on such commerce must be shown. They require only a burden. If the necessary operation and effect is to burden interstate commerce, it is unconstitutional.

The *Western Union* decisions were not distinctly and consciously placed upon the ground that the tax was a fluctuating percentage tax, but the Kansas tax was in fact such.

*Baltic Mining Co.* v. *Massachusetts, supra,* did not modify these principles, but was decided upon its special facts; for the court found that the Baltic Company did not, like the Western Union Company, conduct interstate and domestic business at the same places and through the same instrumentalities. As applied to the Baltic Company, the Massachusetts statute was sustained. Here the facts, as applied to the present companies, are totally different, although the statute is the same. No attempt was made in the *Baltic Case* to differentiate the terms of the Kansas and Massachusetts statutes. Nor could any substantial distinction have been established, because of the fact that other companies not then before the court were totally exempted from taxation beyond a $2,000 excise, representing 1/50 of 1% on a capitalization of ten million dollars. The companies there under consideration were subjected to a "fluctuating" percentage tax, increasing in exact proportion to every dollar of additional capital used in or required for extensions of interstate business. The Kansas and Massachusetts statutes being identical in all material respects, the *Baltic* decision must rest upon its special facts. The vital fact there appearing was, as stated by the court, that each of the corporations in question was carrying on a purely local and

domestic business quite separate from its interstate transactions. It clearly did not profess to hold that, while a "fluctuating" tax is bad, if without limits, it is valid, if within a maximum which had not been reached by any company before the court, and which can be attained only by the largest companies. Nor was the decision at all based on the consideration that two thousand dollars is a small amount or that it is a reasonable tax. [Discussing and explaining *Kansas City &c. Ry. Co.* v. *Kansas*, 240 U. S. 227.]

Although the Massachusetts excise, as applied to the present companies, is condemned by the *Western Union* decisions, the same result would follow under the earlier cases. *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Allen* v. *Pullman Co.*, 191 U. S. 171.

The amount of an excise of this description must bear some fair and reasonable relation to the value of the privilege of conducting local business, and be levied upon some reasonable basis. *U. S. Express Co.* v. *Minnesota*, 223 U. S. 335, 348; *Fargo* v. *Hart*, 193 U. S. 490; *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, 42; *Marconi &c. Co.* v. *Commonwealth*, 218 Massachusetts, 558, 567.

An excise which operates with inequality because of its improper basis is unreasonable and void under the commerce clause.

All fair and reasonable incidents to, and all instrumentalities of, interstate commerce are protected equally with the commerce itself. They need not be indispensable, reasonably necessary, or inseparable incidents or instrumentalities, as required by the court below. Local offices and agents used for interstate commerce thus are protected, whether they are indispensable or not. *McCall* v. *California*, 136 U. S. 104; *Norfolk & Western R. R. Co.* v. *Pennsylvania*, 136 U. S. 114; *Western Union Cases, supra; Rearick* v. *Pennsylvania*, 203 U. S. 507;

*Stockard* v. *Morgan*, 185 U. S. 27; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Crenshaw* v. *Arkansas*, 227 U. S. 389.

The Massachusetts excise denies equal protection to the White Company, within the doctrine of *Southern Ry. Co.* v. *Greene*, 216 U. S. 400.

It denies equal protection of the laws to all the smaller and poorer corporations having a capitalization less than ten million dollars, because they are discriminated against by the exemption from taxation of capital beyond that amount. It violates the due process clause.

*Mr. William Harold Hitchcock*, Assistant Attorney General of the State of Massachusetts, with whom *Mr. Henry C. Attwill*, Attorney General of the State of Massachusetts, was on the briefs, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

We here are concerned with an excise tax imposed by Massachusetts in 1913 on each of seven foreign corporations on the ground that each was doing a local business in the State. Objections to the tax based on the commerce clause of the Constitution and the due process and equal protection clauses of the Fourteenth Amendment were overruled by the state court. 218 Massachusetts, 558. The tax was imposed under St. 1909, c. 490, Part III, § 56, before the maximum limit was removed by St. 1914, c. 724, § 1, and in that respect the case is like *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, and unlike *International Paper Co.* v. *Massachusetts*, *ante*, 135. Whether in other respects it is like *Baltic Mining Co.* v. *Massachusetts* is the matter to be determined; and this requires that the business done by each of the seven corporations be considered.

### CHENEY BROTHERS COMPANY

This is a Connecticut corporation whose general business is manufacturing and selling silk fabrics. It maintains in Boston a selling office with one office salesman and four other salesmen who travel through New England. The salesmen solicit and take orders, subject to approval by the home office in Connecticut, and it ships directly to the purchasers. No stock of goods is kept in the Boston office, but only samples used in soliciting and taking orders. Copies and records of orders are retained, but no bookkeeping is done, and the office makes no collections. The salesmen and the office rent are paid directly from Connecticut and the other expenses of the office are paid from a small deposit kept in Boston for the purpose. No other business is done in the State.

We do not perceive anything in this that can be regarded as a local business as distinguished from interstate commerce. The maintenance of the Boston office and the display therein of a supply of samples are in furtherance of the company's interstate business and have no other purpose. Like the employment of the salesmen, they are among the means by which that business is carried on and share its immunity from state taxation. *McCall* v. *California*, 136 U. S. 104; *Norfolk & Western R. R. Co.* v. *Pennsylvania*, 136 U. S. 114; *Crenshaw* v. *Arkansas*, 227 U. S. 389; *Rogers* v. *Arkansas*, 227 U. S. 401. Nor is the situation changed by inferring, as the state court did, that orders from customers in Connecticut sometimes are taken by salesmen connected with the Boston office and, after transmission to and approval by the home office, are filled by shipments from the company's mill in Connecticut to such customers. In such cases it doubtless is true that the resulting sale is local to Connecticut, but the action of the Boston office in receiving the order and transmitting it to the home office partakes more of

the nature of interstate intercourse than of business local to Massachusetts and affords no basis for an excise tax in that State. *International Textbook Co.* v. *Pigg*, 217 U. S. 91, 106–107. We think the tax on this company was essentially a tax on doing an interstate business and therefore repugnant to the commerce clause.

## LANSTON MONOTYPE COMPANY.

This is a Virginia corporation which makes typesetting machines in Philadelphia and sells them in interstate commerce. It has a place of business in Massachusetts where it keeps on hand a stock of the several parts of its machines likely to be required for purposes of repair. The stock is replenished weekly and the parts are sold extensively to those who use the machines in that and adjacent States.

It is apparent, as we think, that a considerable portion of the business of selling and supplying the repair parts is purely local and subject to local taxation.

## LOCOMOBILE COMPANY OF AMERICA

This West Virginia corporation conducts an automobile factory in Connecticut and sells its automobiles in interstate commerce. It does an extensive local business in Massachusetts in repairing cars of its own make after they are sold and in use, and also in selling second-hand cars taken in partial exchange for new ones. This local business has some influence on the volume of interstate business done by the company in the State, and its abandonment would tend to reduce the purchases there of the company's automobiles. But this does not make it any the less a local business. It must be judged by what it is rather than by its influence on another business. See *Delaware, Lackawanna & Western R. R. Co.* v. *Yurkonis*, 238 U. S. 439, 444–445.

### NORTHWESTERN CONSOLIDATED MILLING COMPANY

This company was incorporated under the laws of Minnesota, operates flour mills there, and sells the flour to wholesale dealers throughout the country. It has an office in Massachusetts where it employs several salesmen for the purpose of inducing local tradesmen to carry and deal in its flour. These salesmen solicit and take orders from retail dealers and turn the same over to the nearest wholesale dealer, who fills the order and is paid by the retailer. Thus the salesman, although not in the employ of the wholesaler, is selling flour for him. Of course this is a domestic business,—inducing one local merchant to buy a particular class of goods from another,—and may be taxed by the State, regardless of the motive with which it is conducted.

### COPPER RANGE COMPANY

This is a Michigan corporation whose articles of association contemplate that it shall have an office in Boston. It is a holding company and owns various corporate stocks and bonds and certain mineral lands in Michigan. Its activities in Massachusetts consist in holding stockholders' and directors' meetings, keeping corporate records and financial books of account, receiving monthly dividends from its holdings of stock, depositing the money in Boston banks and paying the same out, less salaries and expenses, as dividends to its stockholders three or four times a year. The exaction of a tax for the exercise of such corporate faculties is within the power of the State. Interstate commerce is not affected.

### CHAMPION COPPER COMPANY

This is another Michigan corporation which maintains an office in Boston pursuant to a provision in its articles of association. It deposits the proceeds of its mining and

smelting business in Michigan in Boston banks and, after paying salaries and expenses, distributes the balance in dividends from its Boston office. The management of its mine is under the control of a general manager in Michigan and he in turn is under the control of the company's directors. The meetings of the latter, which occur several times in a year, are held in the Boston office. At these meetings the directors receive reports from the treasurer and general manager, vote dividends, elect officers, and authorize the execution of deeds and the like for lands in Michigan. These corporate activities in Massachusetts are not interstate commerce and may be made the basis of an excise tax by that State.

## WHITE COMPANY

This is an Ohio corporation which is conducting a business, conceded to be local, in Massachusetts. On being admitted to do business therein it acquired two pieces of land in Boston and at large cost specially improved and adapted them for use, the one as an automobile service station and the other as a garage. A subsequent change in the statute made the excise tax more onerous than before, without, as it is said, any corresponding change being made in the law relating to domestic corporations. In these circumstances the company insists that by the imposition of the tax, as defined in the statute of 1909, it is denied the equal protection of the laws, and it relies on *Southern Ry. Co.* v. *Greene*, 216 U. S. 400. In overruling this objection the state court said, 218 Massachusetts, 579:

"The real estate acquired by this petitioner is of a kind adapted to a very considerable and increasing business, in which there is general competition. The storage and care of automobiles and the performance of necessary service for their repair, maintenance and operation is a widespread business in which large amounts of capital

are invested and considerable numbers of persons are engaged.   Such establishments are frequent subjects for lease and sale.   There is nothing to indicate or to warrant the inference that the petitioner's investment in real estate is not readily salable at reasonable prices.   It is not property of a nature irretrievably devoted to a limited and monopolistic use, and not readily available either for other valuable uses or to other persons ready to devote it.to the same uses at prices fairly equivalent, subject to the general vicissitudes of business conditions, to the original investment.   The *Greene Case* related to railroad property, which is not susceptible of use for any other purpose without great loss.   In that opinion it was said, 'It must always be borne in mind that property put into railroad transportation is put there permanently.   It cannot be withdrawn at the pleasure of the investors.   .   .   . The railroad must stay, and, as a permanent investment, its value to its owners may not be destroyed.' "

Assenting, as we do, to what was thus said, it suffices to add, first, that a State does not surrender or abridge its power to change and revise its taxing system and tax rates by merely licensing or permitting a foreign corporation to engage in local business and acquire property within its limits, and, second, that " a State may impose a different rate of taxation upon a foreign corporation for the privilege of doing business within the State than it applies to its own corporations upon the franchise which the State grants in·creating them." *Kansas City, Memphis & Birmingham R. R. Co.* v. *Stiles*, 242 U. S. 111, 118.

Bearing in mind that the tax of which these corporations are now complaining was imposed under the statute as it stood in 1913, which was before the maximum limit was removed, it follows from our decision in *Baltic Mining Co.* v. *Massachusetts* that the several objections based on the. Constitution of the United States are all

untenable, save in the instance of the Cheney Brothers Company. The tax on that company, as before indicated, was a tax on interstate business and therefore void under the commerce clause.

*Judgment reversed as to Cheney Brothers Company and affirmed as to the other plaintiffs in error.*