# McFADDIN RICE MILLING COMPANY, INC.,

### v.

## JOAQUIN ARMSTRONG ET AL.

---

San Juan, Law, No. 1408.

DAMAGES FOR REFUSAL OF RICE.

Interstate Commerce—Consummation of Contract.
    1. A contract is consummated when an offer on one side is accepted on the other, and local law cannot add any other element, such as appointment of experts, according to the P. R. Code of Commerce.

McFaddin Rice Milling Co. v. Armstrong.

Interstate Commerce—Deposit in Court.

      2. The local law requires that in case of refusal of goods they must be deposited in court. This is taken from the highly centralized law of Spain and does not apply to procedure in the Federal court in an interstate contract.

Interstate Commerce—Contract Void Locally.

      3. If the local law imposes a penalty for not carrying out a contract in a particular way, but does not declare that such conduct avoids the contract, it may be enforced in the Federal court.

Interstate Commerce—Local License.

      4. Interstate commerce covers not only the contract, but the delivery of the goods, and the intervention of officials for that purpose does not bring the matter within the cognizance of local laws. A contract will be enforced in the Federal court even if it cannot be in the local court.

Opinion filed April 12, 1921.

*Mr. O. B. Frazer* for plaintiff.

*Mr. José A. Poventud* for defendants.

HAMILTON, Judge, delivered the following opinion:

This case comes on to be heard upon demurrer to additional defenses marked A and B in the defendant's answer.

1. Additional defense A sets up that there has been no appointment of experts to decide whether the rice conformed to samples, nor has there been any judicial deposit of the goods prior to bringing suit. The contention of the defendant is that under the local Code of Commerce, § 327, where a sale is by sample, there is no consummation until experts have been appointed and have declared that the article should be

received. This seems to be the law as settled in the Supreme Court of Spain, decision July 7, 1883. The point involved is as to when the contract was consummated. The contention of the defendant is that this provision is similar to that in policies of insurance that no action shall be maintained until the amount of the loss has been determined by appraisal or arbitration. Adams v. South British & Nat. F. & M. Ins. Cos. 70 Cal. 198, 11 Pac. 627; Fisher v. Merchants Ins. Co. 95 Me. 486, 85 Am. St. Rep. 428, 50 Atl. 282. The time of consummation of a contract is undoubtedly important, but it does not seem that this in the case at bar depends upon the provision of the local Code of Commerce. Whether the provision is now fully applicable at all need not be decided; under the general commercial law a contract is complete when an offer is made by one side and is accepted by the other. It is impossible in matters of interstate commerce that the local law should add any other element to the contract. The contract being complete there is nothing more to do except to enforce it.

2. The same Code of Commerce, §§ 332 and 339, requires that if the purchaser refuses to receive, the vendor must deposit the merchandise in court. Whatever may be true of local contracts, this cannot apply to an interstate contract which is sought to be enforced in the Federal court. This provision comes down from the highly centralized administration of Spain, where the court supervises not only bookkeeping of private parties but their contracts and the handling of the goods involved. Whether this practice can be upheld under American conditions need not be decided; but at least it is not a practice which can be enforced through the Federal court. These courts have a simple procedure, based upon the in-

dividualism of the parties. When they make a contract it is fulfilled in one form or other. The court does not supervise anything except the suit whereby the liability is established and the execution necessary to enforce it. It would be impracticable for the Federal court to send the parties to the local courts for the ancillary purpose of a deposit. This court is entirely sovereign in its jurisdiction and depends upon no other. Therefore it must be held that sections of the Code of Commerce above mentioned, and also the Civil Code § 1678 are inapplicable to interstate contracts. This has already been held in effect on demurrer to the original complaint herein.

3. Additional defense B of the answer sets up that the plaintiff is a foreign corporation and has not obtained from the treasurer of Porto Rico a license to transact business nor filed with the executive secretary a copy of its charter, as required by local statute. Political Code, ¶ 2, Act of Porto Rico of March 9, 1911, §§ 37, 38, 40. So far as appears in the pleadings the plaintiff is a foreign corporation and has not conformed to these requirements.

A preliminary question is whether the local law makes it essential that these requirements be fulfilled by providing that the contract of the corporation is otherwise void. In effect the law permits a state to forbid business to be carried on by providing that contracts are void until certain requirements are fulfilled. Whether the law makes the contract void or merely provides that it cannot be enforced in the local court is therefore sometimes a matter of importance. The Federal court follows the interpretation given the statute by the highest court of the state. David Lupton's Sons Co. v. Automobile Club, 225 U. S. 489, 56 L. ed. 1177, 32 Sup. Ct. Rep. 711, Ann. Cas.

McFaddin Rice Milling Co. v. Armstrong.

1914A, 699. It is not clear from the wording of the statute that a contract of a foreign corporation is void under the circumstances set out at bar. It is true that it is unlawful for a foreign corporation to do business until such corporation has secured a license and other papers, but the penalty is declared to be that such foreign corporation shall not maintain any action in Porto Rico upon any contract made by it in the Island, except as above. Elsewhere this is also spoken of as a prohibition, and the agent of the corporation is guilty of a misdemeanor. It is provided that acts executed contrary to the provisions of law are void except where the law preserves their validity. Civil Code of Porto Rico, § 4. It has been held that selling merchandise by a foreign corporation through an agent is local business, subject to municipal tax. Porto Rico v. Branes, Decision of Supreme Court of Porto Rico of November 19, 1920 (manuscript). No decision is cited, however, declaring that such contract is void. The reasonable deduction from the statutes in question seems to be that such contract cannot be enforced in a Porto Rican court. This is far from saying that it cannot be enforced in the Federal court. If the contract is not void it can be enforced in the Federal court even though it cannot be enforced in a local court; for the local authority has no power to limit the jurisdiction of the Federal court. David Lupton's Sons Co. v. Automobile Club, supra.

4. There is a further point to be considered. The question is whether plaintiff herein is doing business within the purview of these statutes so as to require such conformity to local requirements. The case of Cheney Bros. Co. v. Massachusetts, 246 U. S. 147, 62 L. ed. 632, 38 Sup. Ct. Rep. 295, is analo-

gous.   Several states had somewhat similar requirements which were not conformed to by the corporations involved, and the matter went to the Supreme Court of the United States.   It was there settled that interstate commerce extends further than merely transportation across the state boundary.   It involves making the contract in one state, transportation of the goods across the boundary, and the actual delivery of the goods in the second state.   This seems to be true beyond any doubt.   There can be no interstate commerce without a contract in one state and the delivery of the goods in the other state.   The state line is an imaginary line; the parties actually live and contract in the two distinct commonwealths known as states, and so in the case at bar the parties on the one side live in the state of Texas and on the other the territory of Porto Rico.   The fact that the selling company has an agent in the delivery state is not doing business in the delivery state so as to subject the company to the requirements of local policy.   Neither does having an agent to deliver the goods after they have arrived, nor even having an agent to mark the goods for delivery after they have arrived, constitute doing business in the delivery state.   As the Supreme Court says, this is merely making delivery in two steps instead of by one.

The case at bar does not go nearly so far.   There is nothing connected with marking or delivery involved.   Delivery was not accepted and the tender of delivery seems to have been confined to notification from the interstate carrier.   The goods never became a part of the general property of the Island of Porto Rico and so never became subject to local laws.   In the same way the Texas company did not by the acts mentioned do

any local business, and so is not subject to the local laws in the matter of doing business. There were no samples kept which were sold, no local agents turning over orders to local wholesalers, no directors' meetings held in Porto Rico, no local office collecting proceeds of operations. There would seem to have been none of the indicia of local business. Cheney Bros. Co. v. Massachusetts, 246 U. S. 147, 62 L. ed. 632, 38 Sup. Ct. Rep. 295.

This and all other cases go back to the principle of Robbins v. Taxing Dist., where it was held that the negotiation of the sale of goods in one state for the purpose of introducing them into another state is interstate commerce, which cannot be interfered with by the local police power. In that case a peddler traveling from place to place, selling and delivering goods would come within the local police regulations; an agent who solicits orders from samples of articles to be shipped from another state is not subject to such regulations. Robbins v. Taxing Dist. 120 U. S. 489, 30 L. ed. 694, 1 Inters. Com. Rep. 45, 7 Sup. Ct. Rep. 592; Crenshaw v. Arkansas, 227 U. S. 389, 57 L. ed. 565, 33 Sup. Ct. Rep. 294.

It follows therefore that the demurrer to the additional defenses of the answer is well taken.

It is so ordered.