OSGOOD CO. v. BLAND et al.—141 S. W. (2d) 505.

Eastern Section. March 5, 1940.

Petition for Certiorari Denied by Supreme Court, May 5, 1940.

Ely & Ely, of Knoxville, for appellant.
Thomas H. Goodman, of Knoxville, for appellee.

PORTRUM, J. The complainant, the Osgood Company, an Ohio corporation, instituted this suit against Jesse A. Bland individually and Jesse A. Bland Company, Incorporated, to recover the possession of a gasoline shovel in the possession of the corporation and seeking a decree for the purchase price against the defendant Bland individually; the Chancellor granted the relief prayed ordering the shovel turned over the complainant with authority to sell it under

the conditional sales contract and apply the proceeds upon the judgment rendered. From this decree the defendant Jesse A. Bland Company, Incorporated, has appealed to this court.

The first assignment of error is general; the second reading: "The learned Chancellor erred in overruling the oft-repeated motion of the defendant, first, to dismiss the bill because at that time the time for taking proof had expired but no proof had been filed and, second, to strike the complainant's proof because taken and filed out of time; this was clearly error because the statute and the rules of the court require the filing of proof within sixty days after the cause was at issue; the learned Chancellor should have sustained the said motion, struck said proof from the files and dismissed the bill." Code, Sec. 10605, Rule II, subsec. 4.

The case was put at issue on October 17, 1938, and a motion made to dismiss on February 2, 1939, and prior to this motion the Chancellor had permitted the filing of a second amended and supplemental bill which had not been put at issue by the filing of an answer.

The court overruled the motion to dismiss and ordered the complainant to take and complete its proof in chief within 30 days from and after the entry of the order, and the defendants were given 20 days to file their proof. The complainant took its proof in Ohio, but within the 30-day period.

The effect of the insistence is that the statute enacting the rule makes it mandatory upon the Chancellor to enforce the rule as enacted, unless an extension of time is granted as provided by the rule. In other words, the Chancellor has no discretion in the matter, and the rule establishes an irrevocable right in behalf of the defendant. The rules were first adopted by the Chancellors for the purpose of making them uniform, and then enacted by the Legislature, for the purpose of giving notice to the bar and the public and to make them available. The courts have inherent and statutory (Code, sec. 9931-2) power to make, enforce, and relax rules of practice; a rule is an instrument of the court used to expedite the business of the court and the court is not restricted in the administration of its rules in the absence of a clear abuse of discretion on the part of the court to the injury of a party. The defendant has suffered no legal injury because he was forced to a trial of the issues upon the merits. The assignment is overruled.

The next assignment reads: "The learned Chancellor erred in failing to hold that the complainant was a foreign corporation doing an intrastate business, with an agency in Knox County, Tennessee, in violation of the laws of this state and therefore that it had no standing in his court; he should have sustained this insistence of the defendant to dismiss the bill."

The complainant is a foreign corporation with its principal place of business at Marion, Ohio; it is engaged in selling road machinery

throughout the United States, and has a representative in Knox County, Tennessee, who solicits orders and forwards them to the home office in Marion, Ohio, for acceptance. The sale is not consummated until the order has been accepted at the home office and signed by an officer of the company, the signed order being only an offer to purchase under the terms listed by the company. This representative in Knox County has certain territory assigned to him in which to take orders, and he occupies more or less the position of a broker for his business is not confined to the plaintiff company solely, for he takes orders and sells other kinds of road machinery manufactured by divers companies. He procured the order and forwarded it to the company after the defendant had gone to Ohio and inspected the road machinery. The order was accepted by the company and it being a condition of the order that a contract be entered into reciting the terms of the sale, description of the property, etc., and the retention of the title in the seller until payment of the deferred purchase money. The contract provided that it should be construed as conditional sales contracts in Tennessee' are construed. The word ''Tennessee'' is written in the form contract which indicates that the purpose in each state is to make the contract conform to the conditional sales contracts of that state.

The Chancellor was of the opinion that this transaction was an interstate and not an intrastate transaction, and the complainant corporation was not required to domesticate in this state before being permitted to sue upon its contract here. We are of the opinion that this is the correct conclusion.

Whether a transaction by a foreign corporation is interstate commerce, as distinguished from intrastate commerce, is a federal question and the decisions of the United States Supreme Court must be followed by our state courts. Peck-Williamson Heating & Ventilating Co. v. McKnight & Merz, 140 Tenn., 563, 581, 205 S. W., 419; Lloyd Thomas Co. v. Grosvenor, 144 Tenn., 347, 233 S. W., 669.

''It is an established rule, which implies a fortiori where the orders obtained are subject to acceptance or rejection, that the solicitation within the state of orders for goods by the agent of a foreign manufacturer or a corporation, whether by sample or otherwise, that the shipment of goods pursuant to such orders from another state to purchasers constitute interstate commerce, and persons engaged in such solicitation cannot be embarrassed or obstructed by state requirements as to the taking out of licenses, filling certificates, establishing resident agencies and the like. Where the goods are to be shipped from another state, soliciting agents are deemed to be engaged in interstate commerce regardless of whether the orders are taken from residents or nonresidents, or whether they are taken from the individuals, manufacturers, licensed merchants, or dealers.

"The solicitation of orders for goods within a state which are to be shipped to purchasers from another state, is not intrastate commerce, although the seller or his agent maintains an office within the state for the accommodation of his soliciting agents. This principle clearly prevails where the orders obtained are subject to acceptance or rejections by the corporation in another state." 11 Am. Jur. Title Commerce, Sections 46 and 47, page 45.

This text is supported by numerous authorities, both federal and state, and it is unnecessary to do more than to refer to the notes following the text.

The only authority the appellant cites in support of its position is the case of Interstate Amusement Co. v. Albert, 128 Tenn., 417, 161 S. W., 488. The court held "The contract with defendant for furnishing theatrical troups was finally signed and accepted by defendant in Tennessee." In the instant case the acceptance of the contract on the part of the foreign corporation which was made in the State of Ohio and not Tennessee. This case is not in conflict with the above cited text.

The fourth assignment of error is: "The learned Chancellor erred in rendering a decree for the possession of the shovel involved against either of the defendants because the proof shows that the conditional sales contract was not executed at the time the sale was made and the shovel delivered; the learned Chancellor should have held that, the effort to retain the title having been subsequent to the sale, it was invalid."

In drafting the contract in Marion, Ohio, and inserting the amounts of the deferred payments represented by notes, there was an error in the amount of each of the notes increasing the sum payable $25, and the contract with these attached notes, together with the bill of lading, were forwarded to a collection bank of Knoxville for delivery to the purchaser upon the execution of the contract, and the notes, and the payment of the cash payment. The shovel was shipped to the purchaser at Bristol, Tennessee. When the purchaser went to obtain the bill of lading and executed the contract and notes, he discovered the error, and called it to the attention of the bank official who got in communication with the complainant in Marion, Ohio, and was instructed to direct the purchaser to execute the contract and the notes, making the cash payment, and the bill of lading would be surrendered to him, and upon the receipt of the contract and notes in Marion, Ohio, a substitute or new contract would be drawn correcting the mistake, as well as new notes, and forwarded to him for execution, and when executed the old contract and notes would be surrendered to him. This procedure was followed. The Chancellor was of the opinion that this was one transaction and that the title to the shovel never passed out of the seller and into the purchaser, and, therefore, there was no subse-

quent attempt to retain title in the seller after the title had passed out from the seller. The purchaser executed the original contract and the notes and had the seller declined or refused to correct the error as it had agreed to do, then the buyer would have been entitled to equitable relief and could have reformed the contract. The parties attempted to reform the contract to make it comply with the terms of the sale without the necessity of calling upon a court of equity to do it for them, and we see no reason why either of the parties should be prejudiced by this procedure. It was the agreement at the time of the execution of the original contract that a substitute contract would be executed correcting the admitted error appearing in the original contract. And the creditors of the purchaser have no right to complain, in fact no creditor is asserting any claim. The defendant corporation, which was organized for the convenience and owned by the individual defendant, took only such interest as the individual defendant possessed when he transferred the shovel to the corporation. The notes being in default, it is the duty of the defendant corporation to pay the notes or surrender the possession of the shovel to the complainant.

The decree of the Chancellor is affirmed. The complainant will comply with the conditional sales contract and advertise the sale of the property according to law upon obtaining possession of the machinery; it appearing that the machinery now is in the custody of the court under a rental contract. The case is remanded to the lower court in order that the complainant may take such action as is necessary to regain possession of the machinery. The cost of the appeal is taken against the appellant.

Ailor and McAmis, JJ., concur.