[Civ. No. 21341. First Dist., Div. One. July 22, 1964.]

DETSCH & COMPANY, Plaintiff and Appellant, v. CAL-BAR, INCORPORATED, Defendant and Respondent.

Domenic J. Cannizzaro for Plaintiff and Appellant.

Edward P. Freidberg for Defendant and Respondent.

SULLIVAN, J.—Plaintiff appeals from an order quashing service of summons upon defendant, a Pennsylvania corporation.[1]

On May 31, 1962, plaintiff commenced the instant action against defendant for an accounting and damages for breach of contract. On June 20, 1962, the trial court made its order for substituted service of summons on defendant pursuant to section 6501 of the Corporations Code.[2] Such service was made. Thereupon defendant appeared specially and moved for an order quashing the service of summons and complaint on the ground that the court lacked jurisdiction over defendant. The motion was heard upon affidavits and upon plaintiff's complaint. The trial court granted the motion.

The complaint contains three counts. The first count alleges in substance that on August 15, 1935, plaintiff entered into a written contract with the ''Albion Manufacturing Company, of Philadelphia, Pennsylvania, or assigns,'' a copy of which is attached to the complaint and incorporated therein by reference;[3] that thereafter Albion Manufacturing Co. (hereafter called Albion) assigned all its assets to defendant and terminated its business; that defendant succeeded to said business and on or about July 18, 1936, expressly agreed that it would be bound by the above mentioned agreement, plaintiff also assenting to its continuance.

---

[1]Although the notice of appeal states that the appeal is from the ''judgment . . . granting defendant's motion to quash service of summons . . . '' it is obvious from the record that the reference is to the court's ''order'' to that effect and the parties herein have so considered it. We do likewise. (Cf. *Vallis* v. *Canada Dry Ginger Ale, Inc.* (1961) 190 Cal.App.2d 35, 36, fn. 1 [11 Cal.Rptr. 823] and cases collected there; Code Civ. Proc., § 963, subd. 4.)

[2]The order provided that service be made by personally delivering to the Secretary of State of California or his deputy a copy of the process together with a copy of the order. Code Civ. Proc., § 411, subd. 2, provides that in a suit against a foreign corporation, doing business in this state, summons must be served by delivering a copy thereof in the manner provided for by §§ 6500 to 6504, inclusive, of the Corp. Code. These sections of the Corp. Code provide for the methods of effecting service of process on foreign corporations. Section 6501, utilized in the instant action, provides for the instances in which a service may be made upon the Secretary of State.

[3]The attachment which is before us was a printed form of ''Sales Agreement'' used by plaintiff.

According to the terms of the agreement, plaintiff on its part assumed certain duties in connection with the promotion and sale of Albion's products[4] and Albion on its part agreed to give plaintiff the exclusive right to sell Albion's products in a specified territory consisting of almost all of the western states (including California) and to cooperate with plaintiff in working such territory.

Albion also agreed to pay plaintiff a 15 per cent ''commission compensation'' on the net amount of all orders accepted by Albion which were received from the territory whether through plaintiff or otherwise and to render to plaintiff at the end of each month during the life of the agreement an itemized statement of the current month's business with the trade in the territory. By its terms the agreement was to remain in effect until August 15, 1938, and thereafter for consecutive periods of three years each unless written notice was received by plaintiff from Albion to the contrary within 30 days prior to the expiration of any period.

Plaintiff alleges that defendant, as Albion's assignee, breached the above agreement by accepting orders within the exclusive territory without accounting to plaintiff or paying it a commission. The second and third counts substantially replead the allegations of the first and for our present purposes need not be set forth in detail. It is sufficient to note that the third count alleges that on February 15, 1962, defendant repudiated and cancelled the agreement.

In support of its motion to quash, defendant filed the affidavit of Vincent E. Dewees, its vice-president and director of technical sales. The affidavit states in substance the following: Defendant, a Pennsylvania corporation, is in the business of manufacturing for sale certain caulking compounds and other paint and varnish products. Plaintiff is an inde-

---

[4]Plaintiff agreed: '' (1) To promote the sale of the products of the said party of the second part actively. (2) To supply the said second party on request with complete list of the jobbing trade solicited by the said first party of the first part within the hereinafter specified territory. (3) To have a representative of DETSCH AND COMPANY call personally upon the jobbing trade within the territory hereinafter specified and at such times to display or distribute such samples and advertising matter as are furnished by the said party of the second part. (4) To exercise discretion in selling only to trade of good financial standing whose accounts are acceptable to the said party of the second part. And assist in making collections. (5) To maintain in the City of San Francisco, State of California a general sales office and display room, and, report to the said second party, on request, as accurately as possible, general market conditions, complaints, adjustments, etc.''

pendent distributor and sales representative having agreements with many other manufacturers throughout the United States for the distribution and sales representation of varied building and hardware products in California and other western states. Defendant does not have, nor has it ever had, any office in the State of California, nor does it presently have nor has it ever had any employees, agents, servants or officers in the State of California for the purpose of conducting business transactions and promoting sales or for any other purpsoe. "The *only contract* that the defendant corporation has had with the State of California is through an *oral* agreement between defendant corporation and plaintiff corporation whereby the defendant corporation has agreed to pay a 10 per cent commission on orders obtained by said plaintiff corporation and approved by defendant corporation at its home office in Philadelphia, Pennsylvania." (Italics added.) At no time has defendant given plaintiff exclusive distribution rights in any state or states, the oral arrangement being "strictly to pay" the aforesaid commission. "[O]n or about January 18, 1962, defendant corporation *terminated any association* with plaintiff corporation and *terminated its oral agreement* with said plaintiff corporation." (Italics added.)

The affidavit further alleges: At all times prior to the termination of the oral agreement by defendant, plaintiff would send orders to defendant and defendant, after approving the same in its Philadelphia office, would mail or ship the items purchased directly to the purchasers, would bill the purchasers directly from its home office in Philadelphia and would receive payment therefor directly from the purchasers at its home office. During this period of time, plaintiff received from defendant no compensation other than the above commission. Plaintiff has in addition been paid a commission for products ordered directly by the purchasers in the western states serviced by plaintiff although orders for the same came directly from the purchasers rather than from plaintiff. The purpose of this was to encourage plaintiff to obtain orders in the area serviced. The only items of merchandise and products sold by the defendant in the area serviced by plaintiff were on a mail order basis and were limited to caulking compounds and caulking guns. Approximately 90 per cent of all orders from west coast wholesalers or distributors came directly to defendant from such wholesalers or distributors. Plaintiff at no time during the duration of the oral agree-

ment had any authority to accept or reject orders, adjust claims, or exercise any administrative or other function in relation to the mail order sales.

It is also alleged that the gross sales by defendant in California from these products from 1957 to 1961 were as follows: 1957, $4,172.20; 1958, $5,350.71; 1959, $6,332.28; 1960, 6,632.90; 1961, $5,303.96.

According to Mr. Dewees' affidavit, plaintiff is not an agent of defendant, the only connection between them being the above agreement to pay commissions, plaintiff having been in essence "only an order-taking conduit" for defendant. Defendant has never advertised in any trade papers, magazines or other forms of communication in California. At no time during the duration of the above oral agreement was there any activity by defendant in the State of California other than the above described sales through plaintiff as an independent distributor. At no time has defendant maintained any property or items of inventory in the State of California. Mr. Dewees summarizes his position in one of the closing paragraphs of the affidavit: "At no time during the duration of said oral agreement or at any other time has the defendant corporation maintained in the State of California a representation which gave it in a practical sense and to a substantial degree the benefits and advantages it would have enjoyed by operating through its own office or paid sales force."

The affidavit of A. Jackson Detsch, plaintiff's president, in opposition to defendant's motion to quash, denying the allegations of specified paragraphs of Mr. Dewees' affidavit, thereby denies that there was an oral agreement between the parties as therein alleged and controverts all allegations of the alleged relationship between them based on such oral agreement; denies that commissions paid plaintiff by defendant for orders received from purchasers directly rather than from plaintiff were for the purpose of encouraging plaintiff to obtain orders in the areas serviced by plaintiff; denies that the defendant, prior to its termination of the agreement, had paid plaintiff all commissions due on orders secured by plaintiff and approved by defendant; and denies that plaintiff is not the employee, agent, servant or officer of defendant and that plaintiff was only an order-taking conduit for defendant.

The affidavit affirmatively alleges in substance as follows: Defendant "took over" the business and obligations of

Albion, including the contract dated August 15, 1935. On or about July 18, 1936, defendant entered into an agreement with plaintiff providing that the same agreement that existed between Albion and plaintiff would apply to plaintiff's representation of defendant on the West Coast.[5] Pursuant to the contract and understanding between the parties, plaintiff performed specified functions[6] in respect to sales of defendant's products "for and on behalf of defendant in the State of California *continuously* from the date of said contract on or about July 18th, 1936, to and including its *wrongful termination* by defendant on or about *January 18, 1962, . . . "* (Italics added.) Until the wrongful termination or breach of the agreement, plaintiff acted as defendant's sales department within the State of California and other western states, and as a result defendant obtained substantially the same commercial advantages that would be available to it through an office or force of employees in the state.

Mr. Detsch further alleges that plaintiff has requested a complete accounting from defendant in addition to damages for breach of contract; that all witnesses, with the exception of defendant, namely the companies to whom shipments were made without proper commission or accounting by the defendant, are located in and are residents of the State of California and adjacent states; that it would be economically impossible to prosecute the action in Philadelphia and that the cost of transportation of witnesses to Philadelphia would be prohibitive; and that the contract entered into between plaintiff and defendant was to be performed in California and many of the acts complained of against defendant in breach of said contract were perpetrated within California.

It is manifest that there is a conflict in the affidavits on

---

[5] A photostatic copy of a "memorandum of said agreement" is attached to the affidavit and incorporated therein by reference. This consists of a letter to plaintiff allegedly signed by defendant's affiant Mr. Dewees stating in part: "In reference to recent conversation regarding agreement for representing us on the West Coast, we wish to advise that the same agreement that you have with the Albion Manufacturing Company will apply."

[6] These are alleged to be as follows: (a) The maintenance in San Francisco of a general sales office and display room for defendant's products; (b) plaintiff's promotion, as defendant's exclusive agent, of the sale of defendant's products by active solicitation of customers throughout California; (c) defendant's supplying plaintiff with samples and advertising matter; (d) plaintiff's exercise of discretion in selling to the trade and its assisting defendant in the collection of open accounts; (e) plaintiff's reporting of market conditions to defendant.

many points. We are mindful of the settled rule that: "An appellate court will not disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere with express findings upon which a final judgment is predicated. When the evidence is conflicting, it will be presumed that the court found every fact necessary to support its order that the evidence would justify. So far as it has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive. This rule is equally applicable whether the evidence is oral or documentary. In the consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review." (4 Cal.Jur. 2d, Appeal and Error, § 614, p. 495; *Griffith Co.* v. *San Diego College for Women* (1955) 45 Cal.2d 501, 507-508 [289 P.2d 476, 47 A.L.R.2d 1349] and cases there cited; *Emsco Pavement etc. Corp.* v. *City of Los Angeles* (1959) 176 Cal. App.2d 760, 766 [1 Cal.Rptr. 814].) However despite the above rule we seriously doubt whether the issue as to the basis of the business relationship between the parties must be considered resolved in defendant's favor. It will be recalled that defendant's affidavit in support of the motion alleges that "[t]he only contact that the defendant corporation has had with the State of California is through an oral agreement. . . ." The affidavit fails to state when and where such oral agreement was entered into and leaves much to be desired in specificity as to its terms. Plaintiff's affidavit in opposition on the other hand positively and specifically asserts the written agreement of August 15, 1935, assumed by defendant as the foundation of the parties relationship. It is noteworthy that defendant filed no counteraffidavit denying the existence and effect of the agreement with which it has been clearly identified.[7] We of course cannot determine how the trial court treated these opposing allegations since the court did not specify the ground on which its order was made. We believe that the allegations as to the existence of the written contract stand admitted, although, as will appear, this will not affect the conclusion we reach.

However, it is also to be noted that on other crucial points the affidavits are not in conflict or where conflicting that such

[7] It is also noteworthy that defendant confronted with the same allegations in plaintiff's complaint, makes no attempt to controvert the existence of such an agreement by appropriate allegations or denials.

conflict has been resolved favorably to defendant under the rule set forth above. We point out such pertinent allegations infra in our disposition of the crucial issue of the case.

We are presented with two questions on this appeal: (1) Was defendant doing business in the State of California within the meaning of Code of Civil Procedure section 411, subdivision 2, so as to be subject to the jurisdiction of California courts? (2) Was defendant thus doing business in this state at the time of service of process? We deem it unnecessary to consider the first question. Were it necessary to pass on the point we would probably conclude even from defendant's affidavit that the solicitation of business by defendant through plaintiff was a sufficient contact with California so as to constitute doing business in this state, establish defendant's corporate presence within its borders, and render defendant amenable to its process. (*Henry R. Jahn & Son* v. *Superior Court* (1958) 49 Cal.2d 855, 859 [323 P.2d 437]; *Jeter* v. *Austin Trailer Equipment Co.* (1953) 122 Cal.App. 2d 376, 382, 386 [265 P.2d 130].) However we are not required to pass on the point raised by the first question since we have concluded that defendant was not doing business in the State of California at the time of the service of summons and that the alleged cause of action does not arise out of intrastate business transacted in California.

Before considering the second issue, we dispose of a preliminary matter. Confronted with defendant's contention that Calbar was not doing business in California at the time of the service of summons, plaintiff complains that such contention was not made in the trial court and is made herein for the first time. It is urged that defendant's sole contention in the trial court was that defendant did not have sufficient contacts with California to warrant the conclusion that it was doing business here *at any time* and that it was never defendant's contention that it had ceased doing business in this state on January 18, 1962. As mentioned above, the trial court's order does not disclose the specific grounds upon which it was made. We have no transcript of the oral proceedings showing the contentions of the respective parties. Defendant's affidavit does contain an allegation that on January 18, 1962, defendant terminated any association with plaintiff which in the light of the other allegations summarized above is clearly susceptible of the inference that plaintiff's sales solicitation on which jurisdiction could be predicated ceased at that time. This allegation is the funda-

ment of the argument that plaintiff claims was not made below. Certainly the contention which plaintiff concedes defendant did urge below, that defendant was not doing business in California *at any time,* would include the claim that it was not doing business at the time of service of summons. Furthermore the concluding language of plaintiff's affidavit is broad enough to encompass the latter claim.[8] We find nothing in the record which precludes us from considering the issue on this appeal. ■ Moreover we point out that the burden rested on plaintiff who served process on a foreign corporation to establish that such corporation was doing business in the state at the time of service (*Jameson* v. *Simonds Saw Co.* (1906) 2 Cal.App. 582, 586 [84 P. 289]; *Carpenter* v. *Bradford* (1913) 23 Cal.App. 560, 562 [138 P. 946]; *Confidential, Inc.* v. *Superior Court* (1958) 157 Cal. App.2d 75, 79 [320 P.2d 546]) or to establish other requisite statutory authority as a basis of the service. (See Corp. Code, § 6504.)

We proceed to consider the second issue in the light of the pertinent facts as they appear to have been impliedly found by the trial court from the affidavits already summarized by us. (*Griffith Co.* v. *San Diego College for Women, supra,* 45 Cal.2d 501, 507-508.) ■ It is clear that defendant has its main office in Philadelphia, has never had any office, agents, employees, servants or officers in California, and never had or maintained any property or inventory in this state. At no time did it engage in any activity in California in addition to or other than the sales activity engaged in by plaintiff as an independent distributor on defendant's behalf. Whether such activity of plaintiff was under the written contract, as plaintiff claims, or an oral contract, as defendant claims, is for all practical purposes immaterial in the consideration of the instant problem. The important basic facts are that plaintiff solicited orders in California for defendant's products; that such orders were sent to defendant's Philadephia office for approval; that, upon approval, defendant mailed or shipped the purchased items directly to the purchasers in California; that defendant received pay-

---

[8]The prayer of the affidavit states: ''WHEREFORE, defendant corporation prays that the above entitled court adjudicate that the defendant corporation is not doing business in the State of California nor has it ever done business in the State of California in such a manner as to make said corporation amenable to the process of a California court, ...''

ment therefor in Philadelphia directly from such purchasers; and that for such completed sales defendant paid plaintiff a commission. Defendant as an incentive also paid plaintiff a commission on certain other orders received directly from purchasers in the western states serviced by plaintiff, such sales being made by defendant on a mail order basis.

On January 18, 1962, defendant "terminated any association with plaintiff." It has been noted that defendant alleges that on such date it terminated its *oral* agreement with plaintiff. We have already commented upon the divergent positions of the parties as to whether the agreement was oral or written. But it is to be noted that even in its affidavit plaintiff states that on the same date, January 18, 1962, the written agreement was terminated, alleging in a somewhat conclusionary or epithetical manner that the termination was "wrongful." There is thus no conflict that the relationship of the parties terminated on Januray 18, 1962.[9] The trial court could have properly concluded that the only activity establishing defendant's "doing business" in this state as a basis of jurisdiction, namely plaintiff's solicitation of orders, was brought to an end on Januray 18, 1962. The record is clear that substituted service of process was not made on defendant until August 27, 1962, over seven months later.

■ In order that a California court may have jurisdiction over a foreign corporation, it is necessary that such corporation be doing business within this state at the time the summons is served. (Code Civ. Proc., § 411, subd. 2; *Jameson v Simonds Saw Co., supra,* 2 Cal.App. 582, 586; *Thew Shovel Co.* v. *Superior Court* (1939) 35 Cal.App.2d 183, 189 [95 P.2d 149].) A qualification of this rule is found in Corporations Code section 6504 which provides in relevant part: "A foreign corporation which has transacted *intrastate business* in this State and has thereafter withdrawn from business in this State may be served with process in the manner provided in this chapter in any action brought in this State *arising out of such business,* whether or not it has ever complied with the requirements of chapter 3 of this part." (Italics added.)[10] Corporations Code section 6203 defines

---

[9]It is also to be noted, as pointed out already, that even in its own affidavit, plaintiff states that the "functions" performed for defendant (see fn. 6, *ante*) were performed only until January 18, 1962.

[10]Chapter 3 of part 11 (tit. 1, div. 1) of the Corp. Code (§§ 6403-6407) prescribes the procedure prerequisite to a foreign corporation's transacting *intrastate* business in California.

"transacting" intrastate business as "entering into repeated and successive transactions of its business in this State, *other than interstate or foreign commerce.*" (Italics added.)[11]

We have found no statute similar to Corporations Code section 6504 dealing with the situation where the withdrawing corporation has engaged solely in *inter*state commerce. ▮ Since statutory authority is a necessary basis for service upon a foreign corporation (*Confidential, Inc.* v. *Superior Court, supra,* 157 Cal.App.2d 75, 80; *Jameson* v. *Simonds Saw Co., supra,* 2 Cal.App. 582, 584; *Perkins* v. *Benguet Consolidated Mining Co.* (1952) 342 U.S. 437, 440 [72 S.Ct. 413, 96 L.Ed. 485, 490]) and since California law provides for service only on withdrawn corporations which have transacted *intra*state business (Corp. Code, § 6504; see generally 22 Cal.Jur.2d 467), a foreign corporation engaged solely in *inter*state commerce which ceases "doing business" here before it is served with process, is thereby able to avoid suit in this state. (See 5 Stan.L.Rev. 509-510; 31 So.Cal.L. Rev. 354-355.)

▮ The crucial question we face is this: Did defendant's activities in California prior to January 18, 1962, amount to the transaction of *intra*state business so as to bring defendant within the operation of Corporations Code section 6504? Defendant's business did not have to be entirely *intra*state. If there was any substantial intrastate business, the above statute is applicable no matter how much interstate business may have been transacted. (*Oro Navigation Co.* v. *Superior Court* (1947) 82 Cal.App.2d 884, 891-892 [187 P.2d 444].)

▮ Where, as in the present case, there is a solicitation within the State of California of orders for goods by a local distributor or agency acting on behalf of a foreign corporation, such orders being subject to acceptance or rejection by the foreign corporation in another state and where, upon approval of the orders, the goods purchased pursuant thereto are shipped directly from such other state to the purchasers in California, such sales and shipment constitute interstate commerce and the prior solicitation incidental thereto is a part of such interstate transaction and is not intrastate commerce. (*Robbins* v. *Taxing Dist. of Shelby County* (1887)

---

[11]It is noteworthy that § 6403 dealing with qualifications of foreign corporations states in relevant part: "A foreign corporation shall not transact *intrastate business* in this State without having first obtained from the Secretary of State a certificate of qualification...." (Italics added.)

568

120 U.S. 489, 497 [7 S.Ct. 592, 30 L.Ed. 694, 697]; *Crenshaw v. Arkansas* (1913) 227 U.S. 389, 396-401 [33 S.Ct. 294, 57 L.Ed. 565, 567-569]; *Singer Sewing Machine Co. v. Brickell* (1914) 233 U.S. 304, 308-309, 312 [34 S.Ct. 493, 58 L.Ed. 974, 976, 978]; *Sioux Remedy Co. v. Cope* (1914) 235 U.S. 197, 201-202 [35 S.Ct. 57, 59 L.Ed. 193, 197]; *Cheney Brothers Co. v. Commonwealth of Massachusetts* (1918) 246 U.S. 147, 153 [38 S.Ct. 295, 62 L.Ed. 632, 636]; *Sonneborn Bros. v. Cureton* (1923) 262 U.S. 506, 515 [43 S.Ct. 643, 67 L.Ed. 1095, 1100]; *Texas Transport & Terminal Co., Inc. v. City of New Orleans* (1924) 264 U.S. 150 [44 S.Ct. 242, 68 L.Ed. 611, 34 A.L.R. 907]; *Real Silk Mills, Inc. v. City of Portland* (1925) 268 U.S. 325, 335 [45 S.Ct. 525, 69 L.Ed. 982, 985]; cf. *Eli Lilly & Co. v. Sav-on-Drugs, Inc.* (1961) 366 U.S. 276, 278-279 [81 S.Ct. 1316, 6 L.Ed.2d 288, 291-292]; *Charlton Silk Co. v. Jones* (1923) 190 Cal. 341, 342 [212 P. 203]; *W. W. Kimball Co. v. Read* (1919) 43 Cal.App. 342, 345 [185 P. 192]; *Thorner v. Selective Cam Transmission Co.* (1960) 180 Cal.App.2d 89, 91 [4 Cal.Rptr. 409]; *Osgood Co. v. Bland* (1940) 24 Tenn.App. 126 [141 S.W.2d 505, 507]; 11 Am. Jur., Commerce, §§ 46-47, pp. 45-46; 15 C.J.S. Commerce, § 27, pp. 307-309; 60 A.L.R. 994; 101 A.L.R. 126; 146 A.L.R. 941.)[12]

 "Transacting intrastate business" as defined in

[12]*Robbins* v. *Taxing District of Shelby County, supra,* headed a long line of so-called "drummer" cases holding that a tax imposed upon the solicitation. of interstate business was a tax upon interstate commerce itself. As *Robbins* stated "[t]he negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce." (P. 497 [7 S.Ct. 592, 30 L.Ed. at p. 697].) For a partial list of cases following *Robbins* see *Memphis Steam Laundry Cleaner, Inc.* v. *Stone* (1952) 342 U.S. 389, 392, fn. 7 [72 S.Ct. 424, 96 L.Ed. 436, 439].

*Cheney Brothers Co.* v. *Massachusetts, supra,* involving the imposition of an excise tax on seven foreign corporations, held that as to Cheney Brothers, one of the seven, the tax was void under the federal commerce clause as being a tax on interstate business. In respect to Cheney Brothers the court said: "This is a Connecticut corporation whose general business is manufacturing and selling silk fabrics. It maintains in Boston a selling office with one office salesman and four other sales-men who travel through New England. The salesmen solicit and take orders, subject to approval by the home office in Connecticut, and it ships directly to the purchasers. No stock of goods is kept in the Boston office, but only samples used in soliciting and taking orders. Copies and records of orders are retained, but no bookkeeping is done, and the office makes no collections. The salesmen and the office rent are paid directly from Connecticut and the other expenses of the office are paid from a

Corporations Code section 6203 is not the equivalent of "doing business in this State" as used in Code of Civil Procedure section 411, subdivision 2, and has a narrower meaning than the latter phrase. (*Carl F. W. Borgward, G.M.B.H.* v. *Superior Court* (1958) 51 Cal.2d 72, 76 [330 P.2d 789]; *Thorner* v. *Selective Cam Transmission Co., supra,* 180 Cal.App.2d 89, 91.) Justice Traynor wrote in *Borgward, supra,* "[m]oreover, by excluding acts done by a foreign corporation in this state in interstate or foreign commerce from its definition of the words 'transact intrastate business,' . . . [Corp. Code, § 6203] clearly recognized that a corporation may do business in this state without transacting intrastate business." In the *Thorner* case, *supra,* Justice Dooling, writing for the second division of this court said: "Even though negotiations are carried on within the State by an agent of a foreign corporation which lead to the making of a contract with the foreign corporation the corporation is not 'transacting intrastate business' within the state where the final acceptance of the offer which results from the negotiations is made by the foreign corporation at its office outside of the State of California. (*Charlton Silk Co.* v. *Jones,* 190 Cal. 341 [212 P. 203].) The *Charlton* case was one in which the agent of the foreign corporation solicited orders for goods in California which orders were accepted and filled by the foreign corporation at its home office."

It may be argued that no sound reason exists for differentiating between interstate and intrastate business in Corporations Code section 6504 (see 31 So.Cal.L.Rev. 355) but the Legislature has so provided and it is not within our province

small deposit kept in Boston for the purpose. No other business is done in the State.

"We do not perceive anything in this that can be regarded as a local business as distinguished from interstate commerce. The maintenance of the Boston office and the display therein of a supply of samples are in furtherance of the company's interstate business and have no other purpose. . . ." (246 U.S. at p. 153 [38 S.Ct. 295, 62 L.Ed. at p. 636].)

In *Eli Lilly & Co.* v. *Sav-On-Drugs, Inc., supra,* the court followed the decision in *Cheney* that Northwestern Consolidated Milling Company (another one of the seven corporations there involved) *was* engaged in local business, holding that the plaintiff in the *Lilly* case, an Indiana corporation, was also engaged in *intra*state business in New Jersey by engaging in activities directly relating to the intrastate sales of its products by New Jersey wholesalers to retailers and consumers. *Lilly* was a five to four decision with a strong dissent by Mr. Justice Douglas who found no distinction between *Lilly* and *Robbins* v. *Shelby Taxing District.*

to substitute new or different standards. (See *Confidential, Inc.* v. *Superior Court, supra,* 157 Cal.App.2d 75, 80.)

█ Under the facts of the instant case, the activities engaged in by defendant through plaintiff, its California distributor, were part of and incidental to interstate commerce and did not constitute intrastate business. Even assuming according to plaintiff's affidavit that the basis of these activities was the assumption by defendant of the *written* agreement between plaintiff and Albion, it does not appear from such affidavit that the agreement to assume it was a transaction occurring within the State of California. It would appear to have been a "conversation" followed by a letter or memorandum emanating from defendant's home office in Philadelphia. While it is reasonably inferable that the conversation was by telephone it was incumbent upon plaintiff to establish the existence and nature of the agreement. (See *Jameson* v. *Simonds Saw Co., supra,* 2 Cal.App. 582, 586 and other cases cited *supra.*)[13] We therefore conclude that defendant does not fall within the operation of Corporations Code section 6504 and that, since it was not doing business in the State of California at the time of service of summons herein, defendant was not amenable to process in the case before us.

The order appealed from is affirmed.

Bray, P. J., and Molinari, J., concurred.

---

[13]It is also to be noted that plaintiff nowhere alleges that the initial Detsch-Albion agreement was entered into in California so as to constitute a California intrastate transaction. The agreement itself does not state where it was entered into and it is perfectly consistent with plaintiff's allegations and with the agreement that it was finally effected by defendant's officer in Philadelphia. (Cf. *Thorner* v. *Selective Cam Transmission Co., supra,* 180 Cal.App.2d 89, 92.) Moreover, the agreement as a single transaction would not amount to "repeated and successive transactions of its business in this State." (Corp. Code, § 6203.)