# GEORGE E. PRATER v. LOUISVILLE AND NASH-VILLE RAILROAD COMPANY, INC.
## —438 S.W. 2d 68.

Middle Section. July 26, 1968.

Rehearing Denied August 30, 1968.

Certiorari Denied by Supreme Court December 2, 1968.

R. E. Bonner, Jr., McMinnville, for appellant.

Haston & Haston, McMinnville, for appellee.

TODD, J. Plaintiff, George Prater, sued the defendant, Louisville and Nashville Railroad Company, Inc., for personal injuries sustained when the truck in which he was a passenger was struck by defendant's locomotive near a highway crossing.

In the first count of the declaration the plaintiff charged the following acts or omissions of negligence:

1. Failure to sound bell or whistle in time.

2. Maintenance of a dangerous crossing.

3. Failure to keep proper look out.

4. Failure to apply brakes when obstruction appeared on tracks.

5. Failure to stop train after seeing plaintiff's peril.

The second count of the declaration charged violation of Section 65-1208 T.C.A., which provides statutory precautions at certain railroad crossings.

The plea of the defendant denied all of the foregoing charges and affirmatively plead contributory negligence.

At the conclusion of plaintiff's evidence, defendant's motion for directed verdict was sustained; and plaintiff has appealed in error.

Plaintiff assigns as error the action of the trial court in directing a verdict for the defendant. There is testimony to support a finding that the truck occupied by plaintiff approached the railroad crossing upon the public highway at a reasonable speed; that the brakes of the truck were applied at such a distance from the railroad tracks as that the truck would ordinarily have stopped before reaching the tracks; that after skidding the tires a few feet the brakes failed completely; that the truck driver turned the truck from the highway intending to go into an open field; that, as the truck attempted to cross the ditch between the highway and the field, the wheels of the truck were caught in the ditch and the truck rolled or skidded out of control along the ditch until the truck reached the railroad tracks and stopped upon the tracks a few feet from the edge of the highway.

There is further evidence to show that defendant's train consisted of a locomotive, three empty cars and a caboose, of about 75 tons load; that the crew saw the foregoing movements of the truck; that the ordinary running brakes of the train were already slightly applied because of a downgrade movement; that at some stage of the truck's antics the engineer released the running brakes; that, when the locomotive lacked a few feet of

reaching the crossing, the truck was seen to come to a stop on the rails; that at that time the emergency brakes were applied; that the train crossed the highway and struck the truck pushing it about 10 or 12 feet; that slightly more than the width of a two lane highway was required to stop the train; and that the train was almost stopped when it struck the truck.

The foregoing does not present the classic case of the motorist "racing the train to the crossing", or of the motorist "stopping at the last minute", both of which are commonplace in the observation of the average person and in the experience of the trainmen. Neither is this the type of case, well known to the courts, wherein the vehicle appears upon the tracks suddenly and too late for the crew to stop a long, heavy train travelling at considerable speed. The plaintiff insists, and there is evidence to show, that this is a bona fide instance of last clear chance wherein the occupants of the truck were helpless to avoid the peril which should have been obvious to the train crew who were in a position to avoid the peril by the application of the emergency brakes an instant sooner thereby stopping the train before it collided with the truck.

■ The evidence does not support the first ground of the first count, because both plaintiff and his driver admit that they saw and heard the train in ample time to stop for the crossing if the brakes had not failed.

■ For the same reason, and the further reason that plaintiff's proof showed good visibility for the train crew, the second ground of the first count is not supported by the evidence.

■ Plaintiff's proof also shows that the train crew were keeping a look-out and did see the truck approach

the crossing under the circumstances above stated. Therefore the evidence does not support the third ground of the first count.

■ Plaintiff's proof shows that the emergency brakes of the train were applied immediately after the truck appeared on the tracks. The fourth ground of the first count likewise is unsupported by the evidence.

■ Grounds 1, 2, 3, and 4 of the first count of the declaration are in effect a common law reiteration of the statutory charges upon which the second count is based. The evidence does not support the second (statutory) count of the declaration for the same reasons that it does not support the first four grounds of the first count. Furthermore, the record discloses no evidence that the crossing in question had been duly designated for statutory precautions as required by Section 65-1208, T.C.A. Annotated with this code section are many cases which support a directed verdict on the statutory count under the circumstances of this case.

The theory upon which the plaintiff must recover, if at all, is set out in the fifth ground of the first count of the declaration. The strange movements of the truck, in full view of the train crew, could be sufficient to reasonably apprise the crew that the truck was out of control and its occupants in dire straits. Reasonable minds might reasonably reach differing conclusions upon the issue thus presented. It might well be argued and concluded that a truck turning off a highway toward a field and following a ditch toward the rails was upon some legitimate mission which would not involve crossing the railroad. With equal reason and logic, it could be argued and concluded that such movements of the truck were an admonition of peril, requiring action by the train

crew. The situation might be compared to that of a vehicle with brake applied on a wet or icy highway, which turns to a broadside position as it skids toward the rails out of control.

In the case of Gaines v. Tenn. Cent. Ry. Co., 175 Tenn. 389, 136 S.W.2d 441, a directed verdict was affirmed upon the statutory count, however the court found evidence of common law negligence in failing to make an effort to stop the train after it became apparent to the engineer that the automobile was approaching the track under circumstances indicating that * * * a collision was imminent unless something was done. The cause was remanded for trial upon the limited issues in respect to which there was evidence to support plaintiff's case. In respect to issues on which there was no evidence to support plaintiff, the Court said:

"We agree, therefore, with the Court of Appeals that justice will not be furthered by another trial of these issues and that any new trial should be to some extent limited in its scope." (175 Tenn. at 394, 135 S.W.2d at 442)

The action of the trial court in directing a verdict was correct in respect to the first four grounds of the first count and the entire second count, and in these respects is affirmed.

■ In respect to the fifth ground of the first count, the assignment of error is sustained, and the cause will be remanded for trial upon the limited issue presented by the fifth ground of the first count of the declaration.

Upon remand, and prior to trial, the first four grounds of the first count and the entire second count of the declaration should be stricken and withheld from consid-

eration of the jury. Only the fifth ground of the first count of the declaration should be presented to the jury as a theory or ground of liability. The plea of the defendant should be amended accordingly.

■ Plaintiff complains that he was not permitted to cross examine one of the train crewmen. Plaintiff called this crewman as his own witness, but claimed surprise on the ground that the witness's testimony varied from that given in a discovery deposition previously taken. The discovery deposition is not made a part of the record in this Court, hence its contents cannot be considered. The bill of exceptions records statements of counsel for plaintiff which might be construed as quotations from the deposition, but this is not sufficient. In the absence of stipulation of counsel, excerpts read into the record, or other authoritative preservation of the contents of the deposition, this assignment of error cannot be considered.

The cause is remanded for a trial anew only upon the first count of the declaration with the deletion therefrom of paragraphs numbered 1, 2, 3, 4. The costs of this appeal will abide and follow the final determination of the cause.

Affirmed in part.

Reversed in part, and remanded.

Shriver, P. J. (M.S.), and Puryear, J., concur.

## ON PETITION TO REHEAR

TODD, J.

A petition to rehear has been filed on behalf of defendant, Louisville and Nashville Railroad Company, on the ground that the opinion filed in this cause on July 26,

1968 did not discuss or dispose of a "Motion to Strike the Bill of Exceptions", a "Suggestion of Diminution", and a "Demurrer and Motion to Strike the Suggestion of Diminution".

The "Motion to Strike the Bill of Exceptions" was as follows:

"In this cause comes the defendant-in-error or appellee, Louisville & Nashville Railroad Company, Inc. and moves the Court to strike the Bill of Exceptions filed in this cause as being in violation of Rule 6 of this Honorable Court as revised and adopted October 2, 1967, the applicable paragraph of which is as follows:

'In all cases where it appears from the record filed in the Court of Appeals that a rule or special order of the Trial Court so permits, the original depositions and/or bill of exceptions rather than a copy thereof may be sent up and used for all purposes as a part of the transcript.'

"The record in the cause failing to show that a rule or special order of the trial Court permits the original bill of exceptions to be filed rather than a copy thereof as required by the rules of this court."

The "Suggestion of Diminution" requested that the clerk of the trial court be required to furnish a certified copy of the bill of exceptions in lieu of the certified original filed with the record in this Court.

The "Demurrer and Motion to Strike" was grounded upon the supposed impossibility of withdrawing the original bill of exceptions from the custody of this court and restoring it to the custody of the trial court to enable the issuance of a certified copy thereof by the clerk of the trial court.

■ As stated to counsel from the bench during oral argument, it would be an anomaly for this Court to hold that a certified copy of an instrument was preferable to the original, duly certified. By no stretch of the imagination can this Court conceive of an instance in which the original bill of exceptions, duly filed and authenticated by the original signature of the trial judge and the certificate of the clerk, would be less acceptable and less authoritative than a copy of the same original, by whatever means produced or authenticated.

■ Defendant urged in its brief, and urges in its petition to rehear, that the quoted rule of this Court disposes of the question in its favor. This insistence is not sound. There is no statute or no rule of this Court requiring that transcripts on appeal consist only of copies of trial court records. This rule in question is a permissive rather than a mandatory rule. It provides that the original bill of exceptions *may* be used under certain conditions, but neither it nor any other rule of this Court provides that an original bill of exceptions *may not* be used under any other conditions. The rule, therefore, may be used as authority for using original bills of exceptions as a matter of right when the conditions of the rule have been met, but the wording of the rule does not preclude this Court from accepting originals under other conditions, and the rule confers no right upon a party to have a bill of exceptions stricken because it is an original rather than a copy.

Considerable research fails to disclose any published opinion where a bill of exceptions was stricken because it was an original rather than a copy.

In 4A C.J.S. Appeal and Error, Section 1038, page 1008, is found the following text:

"*Original bill.* Except where authorized or required by statute, a copy of the bill of exceptions, and not the original, should be incorporated in the transcript and returned to the appellate court, unless it is necessary to see the original."

The only case cited in the footnote to the foregoing is Fernow v. Dubuque and Southwestern Railroad Company, 22 Iowa 528 (1867), in which the Court said:

"* * * Before closing, however, we remark that the appellee is correct in his claim that the bill of exceptions should have been brought to this court by copy and not in its original form. It is only in some exceptional cases, or when it becomes necessary to see the original, that it should be sent to this court, and if the objection had been made by motion or before the case was submitted, the proper rule would have issued. Raised, however, for the first time in the printed argument, the objection, being one not fatal to the appeal, working at most a continuance to obtain a corrected transcript, conceiving, in their absence, that counsel preferred an early decision upon the merits, we have waived a compliance with the rule, satisfied, as we are, that in this case there was no intention to evade it."

The same C.J.S. footnote cites 4 C.J., page 430, note 28 wherein are cited Fernow v. Dubuque, supra, and Jackson v. Stoner, 17 Kan. 605 (1877) wherein the Court rejected an original bill of exceptions which had not been filed with the trial court at all, and held that the original records of a trial court should not be "broken up" by sending out original papers to other courts.

Other cases cited in 4 C.J. were based upon imperfections, lack of authentication by trial judge or late authentication.

■ In Tennessee, it has long been recognized and accepted without statute or specific decision that the better practice is to preserve original records in the custody of the courts wherein the records were created. From this recognition arose the practice of and statutory permission for certifying copies of judicial records instead of transporting the originals to other courts.

■■ A bill of exceptions, when approved by the trial judge, becomes a part of the record in the court where the case was tried. Section 27-109 T.C.A. As such, the original bill of exceptions should not be removed from the custody of the trial court without the permission of the trial judge. Even though physically removed from the possession of the Clerk of the Court, the original records remain technically "on file" with the Clerk.

Bills of exception are usually voluminous, expensive to copy, and seldom needed by the trial court. For this reason, it has become the predominant practice to certify original bills of exception to this Court, either by compliance with Rule 6, supra, or by acquiescence of counsel and the trial court without special rule or order.

Defendant insists that the rules of this Court should be enforced strictly and cites Hilton v. Johnson City General Hospital, 160 Tenn. 535, 26 S.W.2d 626 (1929). In that case the Supreme Court affirmed a ruling of the Court of Appeals enforcing a rule of court as to when deficiencies in the record might be supplied. In the same opinion, the Supreme Court said:

"(1) The enforcement or nonenforcement of such rule of procedure lies within the discretion of the court by which the rule was adopted. The jurisdiction of this court to review the judgments and decrees of the Court

of Appeals should not be extended to a review of its exercise of discretion in refusing to overlook and condone a litigant's nonobservance of one of its reasonable rules of procedure."

Van Brocklin v. Wolcott, Smith & Co., 52 Tenn. 743 (1871), cited by defendant, sustains a trial court rule governing counsel in the call of the docket.

Railway Companies v. Hendricks, Admr., 88 Tenn. 710, 13 S.W. 696, 14 S.W. 488 (1890), cited by defendant, enforces a Supreme Court rule concerning time for supplying deficiencies in the record.

In Osgood Co. v. Bland, 24 Tenn.App. 126, 141 S.W.2d 505 (1940) this Court held that courts have the inherent power to make, enforce, and relax rules of practice.

In State ex rel. Pennington v. Bailey, 196 Tenn. 285, 265 S.W.2d 882 (1954) the Supreme Court enforced one of its own rules, but said:

"(1, 2) The rules of this Court were made to expedite the hearing of cases in this Court and to try to be as fair as humanly possible to all parties concerned so that every party could have a hearing on the merits of the cases presented here. * * *"

     *     *     *     *     *     *

"* * * But when the point is made, by the opposing party, of an unnecessary delay in doing what should have been done in a short time, we must enforce some reasonable rules. * * *"

In Norton v. Standard Coosa-Thatcher Company, 203 Tenn. 649, 315 S.W.2d 245 (1957), the Supreme Court disposed of a petition to rehear on grounds similar to the present case with the following language:

"(7, 8) There are many authorities which declare that the rules of court should be strictly adhered to, both by the parties and by the court. We think that the proper rule to apply, in applying our Rules, is stated in 21 C.J.S. Courts section 178, p. 284, thus:

'* * * rules of court are but a means to accomplish the ends of justice, and that the court has the power to modify, suspend, or rescind its own rules whenever justice requires it, at least where no party is prejudiced thereby; * * *'

We do not of course wish to be in the position of applying a rule of foot in enforcing these rules but the Court should administer them in a discretionary manner. When it appears to the Court that no harm can be done to the one who makes the motion to enforce the Rule, and that an injustice would be done by enforcing the Rule, then the Court should use grace and discretion in administering the rule. If circumstances demand, an imposition of terms may be applied. In the present case we did not think that harm was done the movent by failing to enforce the rule strictly, while we felt that harm might be done the party failing to comply with the rule by enforcing it. It was for this reason that we now overrule the motion to strike."

As to the general policy of this Court regarding the enforcement of its own rules, the foregoing statement from the Supreme Court should suffice.

As to the interpretation of the quoted portion of Rule 6 of this Court, it has been pointed out that the rule *permits* use of original bills of exception in certain cases, but *does not exclude* the use of originals in other cases deemed proper by this Court.

This ruling does not preclude any action by the trial judge to recall and reclaim the original bill of exceptions in which event a certified copy of same may be substituted in the office of the Clerk of this Court at the cost of the defendant.

The motion to strike the bill of exceptions is overruled, as a result of which no ruling is made upon the suggestion of diminution and the demurrer and motion to strike the suggestion of diminution.

The petition to rehear is respectfully overruled.

Shriver, P. J. (M.S.), and Puryear, J., concur.