GEORGE PRATER, Plaintiff-Appellant, v.
LOUISVILLE AND NASHVILLE RAILROAD
COMPANY, INC., Defendant-Appellee.
—462 S.W.2d 514.

Middle Section. June 26, 1970.

Certiorari Denied by Supreme Court December 21, 1970.

R. E. Bonner, Jr., McMinnville, for appellant.

Charles D. Haston, McMinnville, for appellee.

SHRIVER, P.J.(M.S.).   This is a suit to recover damages for personal injuries received by plaintiff when a truck in which he was riding as a guest passenger was struck by an engine of the defendant Railroad Company at a grade crossing in Warren County near McMinnville, Tennessee.

The case was originally tried in the Circuit Court of Warren County on September 20, 1967, when the Trial Court, at the conclusion of plaintiff's proof, directed a verdict for the defendant. Plaintiff appealed `and this

Court, in an opinion written by Judge Henry F. Todd, reversed and remanded the cause for a new trial. Prater v. Louisville and Nashville Railroad Co., 59 Tenn.App. 82, 438 S.W.2d 68.

On the trial after remand, the cause was submitted to a jury which returned a verdict for the defendant, whereupon, plaintiff again appealed and has assigned errors.

## ASSIGNMENTS OF ERROR

There are three assignments, as follows:

1. The Court erred in excluding the statement of Engineer J. F. Dotson, deceased.

2. The Court erred in excluding the statement of Brakeman J. W. Casey.

3. The Court erred in charging the jury that the plaintiff was guilty of primary negligence as a matter of law.

## THE FACTS

On the morning of August 19, 1964, the plaintiff-appellant, who will be hereinafter referred to as plaintiff, was employed by the Tennessee Department of Highways and at about 10:00 o'clock a.m., another employee of the Highway Department, Wayne Ware, and the plaintiff were on their way to Tullahoma in a Department of Highways truck which was being operated by Ware and, after having made one or more stops without difficulty, they approached the tracks of the defendant Railroad Company at a grade crossing and, seeing a train approaching from the left, the driver applied his brakes which, according to the driver and the plaintiff, took effect for about a second and then completely failed to operate so as to

slow down or stop the truck. The driver in this plight turned his car onto the right shoulder with the intention of driving out into a field or open space, but the wheels of the truck went into a ditch on the side of the road and, being unable to steer the car out of the ditch, it proceeded to and upon the Railroad tracks where it stopped and where, a few seconds later, it was struck by the defendant's engine.

As a result of this accident, plaintiff sustained injuries which he insists are serious and permanent.

It is also evident that, immediately before the accident, the truck was proceeding at a normal speed of approximately 35 to 40 miles an hour and the driver was suddenly confronted with an emergency when he attempted to stop and his brakes failed.

██ We find no evidence in the record upon which to predicate a holding that the plaintiff, a passenger in the truck, was guilty of proximate contributory negligence as a matter of law. Indeed, we fail to find any material evidence of any negligence on his part that proximately contributed to his injuries.

At the first trial in the Circuit Court, statements of the Engineer, J. F. Dotson, who was operating the defendant's engine at the time of the accident, was, by agreement of counsel for both parties, read into the record as evidence before the Court and jury. Also, the statement of J. W. Casey, the Brakeman who was riding in the caboose of the train, was, by agreement, read into the record before the Court and jury. These statements which were taken by an agent of the defendant, are as follows:

*J. F. Dotson:*

"I am 56 years of age and I live at Tullahoma, Tennessee. I am employed by the railroad as engineer and have worked for them since 1944. I was the Engineer on No. 185, August 19th, when we hit a truck at McMinnville, Tennessee. I had engine 1718 and 3 empty cars, tonnage 75 tons. I was handling the engine. It was around 10:30 a.m., weather clear and visibility good. I was going around 27 miles per hour as I came by the whistle post and I saw some traffic up at the highway so I began to slow down. I started my bell at the whistle post and it was ringing, also blew my whistle at this point as there were children, looked like kindergarten age, and I always blow my whistle at them and they wave at me. As I came toward the crossing I was looking out and saw some traffic go across, so I had my engine under control and I would say I was about 12 to 15 miles per hour as I reached the crossing. I would say I was around 75 feet from the crossing when I first saw this man and at this time the truck was about 250 feet from the track and I saw him apply his brakes and he marked the highway. I thought he would either go in front of the engine or stop so I just kicked my brakes off but when the truck got down to the cross arm he turned to the right and hit the ditch and then bounced back on the railroad tracks and stopped and I then applied my brakes in emergency and brakeman Pearson did too. At this time my engine was at the edge of the crossing. We did not have time to stop as the truck was just at the other edge of the crossing off the pavement. After we stopped, I stayed on the engine and did not talk with either the driver or the passenger in the car. My engine was not damaged ex-

cept cut off lever bent, and slight damage to footboard, and one of the control pipes were broken.

This truck skidded nearly two hundred feet as the skidmarks showed in the highway. I did not measure them.''

*J. W. Casey:*

"I am 67 years of age and I live at Sparta, Tennessee. I am employed by the Railroad as Brakeman and have worked for them since 1918. I was the brakeman on No. 185 when we hit a truck at McMinnville on August 19. As we left McMinnville, I was riding in the caboose on the right hand side. I would judge our speed was around 15 miles per hour as we got to the bypass crossing. I was looking out the side window and I saw this truck approaching on my side and I would guess he was several hundred feet back and I told the Conductor I thought he was going to either hit us or get hit one. I guess he was 175 feet to 200 feet from the crossing when all at once he began to skid. At this time I could not tell how far our engine was from the crossing. As the truck got closer I saw him leave the highway at the cross-arm sign and then he went out of my sight and about this time the brakes went on in emergency. We stopped with the engine on part of the crossing. The truck was in front of the engine. We did not move the truck very much after it was hit. I did not talk with the driver. I did ask the other man if he was hurt and he said he did not think he was hurt bad. I could not see any blood and when I asked him if he was hurt he was holding his side. After the accident, I showed the skidmarks to the Highway Patrolman and they appeared to be nearly 200 feet long. I did not

measure them, but I understand they did. This man was not on the crossing when he was hit, but was off the edge of the pavement.''

There seems to be no question but that these statements were introduced in evidence by agreement in the first trial. Counsel for the defendant Railroad Company in his Reply Brief and Argument states that, on the first trial the plaintiff charged the defendant with both statutory and common law negligence and, at the conclusion of plaintiff's proof, the Trial Judge directed a verdict for the defendant. He recites the fact that, on appeal to this Court, the Trial Court was reversed and the cause remanded for another trial on the ground that the cause should have been submitted to the jury on the question of defendant's common law negligence. In counsel's Reply Brief, it is said:

"The plaintiff's motion for a new trial was overruled and this appeal perfected. The only questions before this Court are whether or not the stipulation made by the defendant with the plaintiff prior to the first trial relative to the use of these written statements is binding upon the defendant at a subsequent trial; and, if the stipulation was binding, was the Trial Court guilty of only harmless error in refusing to require adherence to the stipulation.

It is the insistence of the plaintiff that the stipulation entered into prior to the first trial under the facts in the record is binding upon the defendant at the second trial and that the Trial Court is thus in error. It is the insistence of the defendant that said stipulation under the facts in the record is only binding upon

it for use at the first trial, and because of the change in conditions of the second trial, said defendant is not bound by the stipulations; and that the Trial Court was correct in refusing to allow these statements to go to the jury. Further, it is the defendant's insistence that even if the Trial Court did err, refusal to allow these statements to go to the jury was harmless error.''

The oral agreement and stipulation of counsel in open court with respect to the introduction of the statement of the Engineer, Dotson, is recorded in part in the Bill of Exceptions as follows:

MR. HASTON: ''Judge, I will tell you what L & N will do, we will give Mr. Bonner the Engineer's statement, if Mr. Bonner will allow us, if we so choose, to use that statement in testimony on the trial.''

\* \* \* \* \* \*

THE COURT: ''You might show there that it is agreed by counsel that the plaintiff or defendant may use the statement of the Engineer if either desire.''

Counsel for the plaintiff, on the remand, proposed to read the statement pursuant to the stipulation of counsel and as a declaration against interest by a person since deceased, it being shown that the Engineer, Dotson, had died in the meantime.

In addition to the foregoing oral agreement, there is in the record the following letter with respect to the introduction of the statement of the Brakeman, J. W. Casey:

"Law Offices
HASTON & HASTON
McMinnville, Tennessee
37111

Clarence E. Haston                    P. O. Box 143
Charles D. Haston

January 10, 1967

Mr. R. E. Bonner, Jr.
111 W. Court
McMinnville, Tennessee

RE: Prater v. L & N

Dear Robert:

Enclosed are copies of statements of Mr. J. W. Casey,
Mr. A. Pearson and Mr. F. R. Broyles with the under-
standing, as per our conversation yesterday, that the
plaintiff or the defendant may utilize these remarks by
reading them in Court if they so choose.

Also, the name of the air brake manufacturer and ex-
pert is General Motors, Inc., Westinghouse Air Brake.
Contact Mr. John Kisler, c/o Westinghouse Air Brake,
Atlanta, Georgia.

Very truly yours,

HASTON & HASTON
BY: /s/ Chuck
CDH/sh
Encls."

In the decision of this case on the first appeal (Prater
v. Louisville and Nashville Railroad Co., 59 Tenn.App.
82, 438 S.W.2d 68), it is perfectly apparent that this
Court reversed the cause for a new trial based on the
fifth ground of the first count of the declaration and the

evidence, including the statements of the Engineer and Brakeman. Among other things, this Court said:

"The theory upon which the plaintiff must recover, if at all, is set out in the fifth ground of the first count of the declaration. The strange movements of the truck, in full view of the train crew, could be sufficient to reasonably apprise the crew that the truck was out of control and its occupants in dire straits. Reasonable minds might reasonably reach differing conclusions upon the issue thus presented. * * * With equal reason and logic, it could be argued and concluded that such movements of the truck were an admonition of peril, requiring action by the train crew. * * *

\* \* \* \* \* \*

In respect to the fifth ground of the first count, the assignment of error is sustained, and the cause will be remanded for trial upon the limited issue presented by the fifth ground of the first count of the declaration."

Counsel for the Railroad frankly admits that he entered into an agreement with respect to the introduction of the statements of the two crewmen, which statements were taken by an agent of the Railroad, because he conceived that these statements would be useful in showing that the Engineer, in particular, as well as the crew, had complied with all statutory requirements such as blowing the whistle, ringing the bell, etc. He further frankly states that, when the cause came back for the second trial on the common law count of negligence, these statements of the crewmen were no longer necessary for his defense and, therefore, he objected to their introduction and his objections were sustained.

■ We are of opinion that the action of the Trial Judge in excluding these statements on the second trial was error.

In the first place, the agreement to use said statements in lieu of depositions or other testimony was made in good faith and was approved by the Trial Judge. It is apparent that counsel for plaintiff, in reliance on this agreement, entered into the second trial without attempting to bolster his evidence as to common law negligence on the part of the Railroad by other proof.

As stated in Tennessee Procedure in Law Cases, Higgins & Crownover, Sec. 1130, stipulations, in procedural terminology, are agreements entered into between the parties concerning matters of fact or of procedure or even of rules of law. They are of great aid and stipulations may be made within the whole range of the lawsuit. Stipulations in respect to facts, thus, dispense with all evidence as to those facts and they should be encouraged by the Courts.

Sec. 1131 of the same text is as follows:

"*1131. Effect of Stipulations.*—So long as stipulations remain unmodified, they will be controlling in the future disposition of the case. They cannot be receded from, nor can there be a change of attitude respecting the same, after the case is transferred to another court, or comes again for review even in the same court. Stipulations deliberately entered into must be enforced. Nor will change in representation have any effect upon valid stipulations previously entered into. The stipulation entered into in one court by an attorney then employed, cannot be departed from in an appellate court by a new or substitute attorney."

At Sec. 1135, it is said:

"The general rule is that stipulations are regarded as contracts or agreements, and they can be rescinded only upon grounds justifying the setting aside of such agreements or contracts generally."

and in Sec. 1137, it is said:

"Notwithstanding the existence of facts which would warrant relief against stipulations, a party may be estopped to raise the question if he has by his conduct changed the status of the case and has induced his adversary to incur considerable expense and forego certain rights and advantages which he may have discarded upon the assumption that the stipulations in question would be adhered to. In other words, the right to recall stipulations must be denied where it would be manifestly unjust to the opposite party."

In Utley v. Louisville & N. Railroad, 106 Tenn. 242, 61 S.W. 84, in dealing with facts which had been presented to the Court by statements of counsel, the Court said:

"The cause has been heard in this court at a former term, when the facts were fully developed, and the cause was reversed and remanded for an error in the charge of the court. It is evident that upon this latter trial the plaintiff did not attempt to fully develop and present the facts in the cause, and this was evidently upon the impression that the issues had been narrowed down and confined to the matters presented by the statements of counsel.

We are of opinion that, in that view of the case, the court below was in error in sustaining the demurrer."

In Hammon v. Miller, 13 Tenn.App. 458, 462, the Court, in holding that parties are bound by oral statements and agreements made by their attorneys in open court during the progress of a trial, said:

"Parties are bound by the oral statements and agreements made by their attorneys in open court. Utley v. Railroad, 22 Pickle [106 Tenn.] 242, 61 S.W. 84; Fuller v. Jackson [Tenn.Ch.App.], 62 S.W. 274."

To like effect is Armstrong v. Exum, Tenn.Chancery App., 52 S.W. 1024, where it was said:

"We think the chancellor also erred in excluding the evidence excepted to by the defendants on the hearing. Aside from the question of whether this was a direct or a collateral attack upon the decree in the tax case in which the lot was sold, the parties, by express stipulations, agreed that the chancellor should consider the excluded evidence in deciding the case. It results that the decree of the chancellor is reversed with costs. * * *,,

It is our conclusion that the statements of the two trainmen which by agreement were read into the record at the first trial, were subject to rules similar to those that apply to depositions or proof otherwise introduced at the trial of a cause and made a part of the record.

In Saunders v. City & Suburban R. Co., 99 Tenn. 130, 41 S.W. 1031, it was held:

"A deposition taken by defendant, and used by it on the first trial, may be offered in evidence by plaintiff on a second trial, after defendant has closed its evidence without offering the same. And plaintiff's reasonable expectation that it would again be offered by defendant

is a sufficient excuse for failing to read it as evidence in chief.''

In Brandon v. Mullenix, 58 Tenn. 446, it was held:

'It was error in the court below to exclude a deposition taken and filed by one party, but not read by him, when the opposite party offered to read it as his evidence. A deposition filed becomes a witness in the case, and either party may read it, thus making the deponent his own witness.''

It is suggested that the declaration was amended at the trial on remand, and that this gave defendant's counsel a right to object to the use of the statements of the engineer and brakeman. We do not agree with this position. The amendment was immaterial. The case was tried according to the order of remand on the common law count of the declaration wherein the statement in question were material to the theory on which plaintiff proceeded.

The first two assignments are sustained.

The third assignment is that the Court erred in charging the jury that the plaintiff was guilty of primary negligence as a matter of law.

It is interesting to note that the Trial Judge in his charge to the jury, among other things, stated as follows:

"This lawsuit is as simple as A, B, C. There is just one question you will have to answer, and that is: This lawsuit is predicated on what we know as the last clear chance doctrine. I shall undertake to describe it for you later on and tell you just what that doctrine is and what it implies. You begin, that doctrine implies negligence on the part of Prater in the first instance

because when you rely on the doctrine of last clear chance you say that you were guilty of negligence and you were in a position of peril, and that he failed to exercise ordinary care and caution to prevent the injury.

Now then, that's the only question that you have got to decide. You start out as a matter of law that Mr. Prather was guilty of negligence. Now the only question is: was,—you are not concerned with the question what rate of speed the train was coming; did the train sound its whistle; did the train comply with all the laws of the road? Forget all those questions. They are none of your inquiry. And, politely, so far as this lawsuit is concerned it makes no difference, that is. not the question. There is not but one question in this lawsuit, and that is: the last clear chance doctrine.''

■ Nowhere in the declaration or, in fact, in the pleadings, is the doctrine of last clear chance mentioned. We fail to find wherein the cause proceeded on this theory. Since the cause was remanded to be tried on the fifth ground of the first count of the declaration, the Trial Court's charge, as above quoted, was improper and erroneous.

For all of the reasons hereinabove set forth, the judgment is reversed and the case remanded for a new trial consistent with this opinion and with Prater v. Louisville and Nashville Railroad Co., 59 Tenn.App. 82, 438 S.W.2d 68.

Reversed and remanded.

Puryear and Todd, JJ., concur.