**FILED**
**Jul 19, 2023**
**03:32 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Michael Lentz | ) | Docket No.     2021-05-0570 |
| | ) | |
| v. | ) | State File No.  54706-2020 |
| | ) | |
| Coca-Cola Consolidated, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard June 8, 2023 |
| Compensation Claims | ) | in Nashville, Tennessee |
| Dale A. Tipps, Judge | ) | |

---

### Affirmed in Part, Reversed and Modified in Part, and Certified as Final

---

This is the employer's appeal of a compensation order finding the employee's claim compensable and awarding benefits. The employee alleged an injury to his right shoulder while unloading pallets and stocking two-liter soda bottles. The employer provided a panel of orthopedic specialists, which it asserted complied with Tennessee Code Annotated section 50-6-204(a)(3)(B), and it authorized certain medical treatment. The employer then declined to pay further benefits based on the opinion of the physician selected from that panel. The employee sought medical treatment on his own, including surgery, and that physician opined the injury was primarily caused by the work accident. The employer obtained an employer's examination, and that physician agreed with the panel physician regarding medical causation. At trial, the court determined that none of the physicians' causation opinions were entitled to a presumption of correctness and that the employee met his burden of proving that his injury and need for surgery arose primarily from the work accident. The court awarded temporary and permanent disability benefits and future medical care made reasonably necessary by the work accident. However, the court declined to award the employee his expenses for the unauthorized medical treatment, finding that no proof had been presented that those expenses were reasonable and necessary. The employer appealed. After careful consideration of the entire record and the arguments of counsel, we affirm the court's determination that the injury was compensable and its award of temporary and permanent disability benefits and reasonable and necessary future medical care. We reverse the court's denial of the stipulated medical expenses and modify the compensation order accordingly. We certify as final the modified compensation order.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

1

Garett P. Franklyn and Allison P. Tomey, Knoxville, Tennessee, for the employer-appellant, Coca-Cola Consolidated, Inc.

Christopher Kim Thompson, Nashville, Tennessee, for the employee-appellee, Michael S. Lentz

## Factual and Procedural Background

On August 21, 2020, Michael Lentz ("Employee") was lifting two-liter bottles of soda from a pallet and arranging them in an overhead display in the course and scope of his employment with Coca-Cola Consolidated, Inc. ("Employer"), when he felt pain in his right shoulder and arm. He reported the incident the following day to his supervisor, and Employer sent Employee to an urgent care clinic. Eventually, Employee, a resident of Maury County, was referred to an orthopedic specialist. Employer provided a panel that included two physicians associated together in practice and located in Davidson County and a third physician located in Wilson County. Employee selected one of the Davidson County physicians, Dr. Jason Haslam, and Employer scheduled an appointment. Prior to the appointment, Employee underwent an MRI of his right shoulder on November 12, 2020, which revealed "[a]dvanced glenohumeral osteoarthritis with findings of circumferential degeneration/tearing of the glenoid labrum."

Employee saw Dr. Haslam in December 2020. Dr. Haslam obtained an x-ray, and upon review he noted "primary degenerative joint disease with joint space narrowing . . . and large osteophyte formation." Dr. Haslam also reviewed the MRI report and diagnosed Employee with right shoulder osteoarthritis, stating it was his "opinion that [Employee's] current symptoms are less than [fifty percent] related to his work injury. The vast majority of this patient's problems [are] related to degenerative joint disease." Dr. Haslam provided a cortisone injection to address Employee's pain but stated any further treatment should be outside of the workers' compensation system.

Employee sought a second opinion on his own from Dr. Paul Thomas, an orthopedic physician located in Williamson County, who saw Employee in late December 2020. Dr. Thomas reviewed the MRI and performed a physical examination. His impression was that Employee had "moderate to severe osteoarthritis [in the right shoulder]; . . . a right shoulder paralabral cyst with a tear of the labrum; . . . [and] right shoulder impingement syndrome." Based on Employee's statements that he had experienced no prior issues or pain in that shoulder, Dr. Thomas determined that, while there was "moderately severe osteoarthritis," Employee did have an acute injury causing his pain, and thus his "shoulder injury was secondary to his injury at work." On February 10, 2021, Dr. Thomas performed arthroscopic surgery on Employee's right shoulder and repaired the torn labrum. Employee continued to treat with Dr. Thomas until September 9, 2021, when Dr. Thomas released him to return to work without restrictions.

The parties were unable to resolve the claim by agreement during mediation, and a Dispute Certification Notice was issued in September 2022. Thereafter, a third physician, Dr. Chad Price, evaluated Employee at Employer's request on October 24, 2022. Dr. Price reviewed the films from Employee's objective testing, Dr. Haslam's report, and the medical records from Employee's treatment with Dr. Thomas. In his evaluation and report, he agreed with Dr. Haslam that the work injury was an exacerbation of Employee's pre-existing condition. Dr. Price also responded to questions submitted by Employer, answering in the affirmative when asked if Employee's "current symptoms were less than 50% related to [the] work injury." All three doctors were deposed, and their testimony was consistent with their medical reports.

Prior to the compensation hearing, the parties submitted a joint pre-compensation hearing statement that identified the contested issues as: (1) compensability based on medical causation; (2) whether Dr. Haslam, as the authorized physician, was entitled to a rebuttable presumption of correctness; and (3) what qualified as Employee's "community" under Tennessee Code Annotated section 50-6-204. In the statement, the parties stipulated to several matters, including: (1) the compensation rate; (2) the time period of temporary total disability; (3) the assigned impairment rating; (4) that the panel provided by Employer included two doctors associated in practice at Tennessee Orthopedics Associates; and (5) that there were "[u]npaid medical expenses requiring payment or reimbursement" of $16,222.43.

At trial, Employee argued that the orthopedic panel was legally defective because two of the doctors were associated in practice. As such, Employee contended Dr. Haslam's causation opinion did not have a rebuttable presumption of correctness under Tennessee Code Annotated section 50-6-102(12)(E). He further argued that without that presumption, Dr. Thomas's causation opinion should be the opinion accepted by the court.

In response, Employer argued the panel provided was valid under Tennessee Code Annotated section 50-6-204(a)(3)(B), asserting there were not physicians available within Employee's community to compose a panel, and, therefore, it was appropriate to provide a panel of three physicians within a 125-mile radius of Employee's community with no more than two associated in practice. As such, Employer contended Dr. Haslam's causation opinion did have a rebuttable presumption of correctness. In the alternative, Employer argued the opinions of Dr. Haslam and Dr. Price outweighed the opinion of Dr. Thomas even without applying a presumption of correctness.

Following the compensation hearing, the court determined that the burden was on Employer to establish that it provided a valid panel, and it concluded that Employer had not met its burden, rendering the panel legally invalid. It then weighed the proof among the three experts and found Dr. Thomas to be more persuasive than Drs. Haslam and Price. The court also found, in the alternative, that even if Dr. Haslam was entitled to a presumption of correctness, that presumption was overcome by Dr. Thomas's opinion.

3

Thus, it awarded temporary and permanent disability benefits and reasonable and necessary future medical benefits. It declined to award the incurred medical expenses of $16,222.43, however, stating there had been no proof submitted establishing the reasonableness and necessity of those expenses. Thereafter, Employee filed a motion to reconsider regarding the court's refusal to award the unpaid medical expenses, which the trial court denied. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). Moreover, a trial court has the discretion to determine which testimony to accept when presented with conflicting expert opinions, and we review such determinations using an abuse-of-discretion standard. *Johnston v. Siskin Steel & Supply Co.*, No. E2020-00799-SC-R3-WC, 2021 Tenn. LEXIS 241, at *30-31 (Tenn. Workers' Comp. Panel Feb. 10, 2021). Conversely, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

**Analysis**

On appeal, Employer raises numerous issues, which we restate as follows: (1) whether the trial court erred in placing the burden on Employer to establish it provided a valid panel; (2) whether the trial court's declination to determine the scope of Employee's "community" was error; (3) whether the trial court abused its discretion in finding Dr. Thomas's opinion to be more credible than those of Dr. Haslam and Dr. Price; and (4) whether Dr. Haslam's opinion regarding causation should have been afforded a presumption of correctness. For his part, Employee asserted on appeal that the trial court erred in declining to award the stipulated medical expenses.

*Trial Court's Evaluation of Medical Opinions*

As an initial matter, we note the trial court determined the panel provided by Employer was defective because Employer provided no proof that there were not three available physicians unassociated in practice within Employee's community for placement on a panel consistent with section 50-6-204(a)(3)(A). Because the trial court determined Employer had failed to meet this burden of proof, the court concluded it did not need to evaluate the meaning of "community" as stated in Tennessee Code Annotated section 50-

6-204(a)(3)(B). Employer contends on appeal that such a ruling improperly places the burden of proof on Employer in contravention of Tennessee Code Annotated section 50-6-239(c)(6), which states that "the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." However, the trial court also found that, even if the panel was legally valid and Dr. Haslam's causation opinion did have a rebuttable presumption of correctness, the proof provided by Dr. Thomas overcame that presumption.

When a trial court is faced with competing expert medical opinions, the judge has the discretion to determine which opinion to accept and can consider, among other things, the qualifications of the experts, circumstances of their examinations, information available to each expert, and the evaluation of the importance attached to the information by other experts. *Bass v. The Home Depot U.S.A., Inc.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017). Here, the trial court considered the depositions of the physicians, the medical records, and the testimony of Employee in determining that Dr. Thomas's opinion was more persuasive.

When asked in his deposition about the injury, Dr. Haslam testified that his "understanding" was "there was no specific injury. This was . . . 'I used my arm, lifting my arm overhead at work, and my arms are hurting now.'" Dr. Haslam commented that the MRI report did not show a tear as diagnosed and repaired by Dr. Thomas but stated he "wouldn't be surprised" if Employee had a tear. He further testified that a tear could come from an injury or from osteoarthritis. Meanwhile, Dr. Thomas described the injury as occurring when Employee "was doing some overhead lifting with some heavy . . . case[s] of drinks." Although Dr. Thomas agreed that the MRI report did not note a tear, he diagnosed Employee with a tear of the labrum at his initial appointment and confirmed that diagnosis during surgery. He further testified he did not believe the osteoarthritis, which he also diagnosed, contributed to Employee's torn labrum. Employer's expert, Dr. Price, testified that while the work injury exacerbated Employee's preexisting osteoarthritis, he did not believe it to be the primary cause of his condition.

Dr. Haslam, as noted by the trial court, saw Employee one time and, according to his deposition, did not review the actual MRI film of the shoulder. Similarly, Dr. Price saw Employee at Employer's request for one appointment. Conversely, Dr. Thomas treated Employee over the course of several months, performed surgery, and testified to an anatomic change in Employee's shoulder caused by the work incident. In its decision, the trial court noted Employee's testimony regarding the sudden onset of symptoms and the improvement of symptoms he experienced following the surgery, which it concluded supported Dr. Thomas's testimony. Under these circumstances, given the trial court's discretion to give greater weight to the opinion of the physician who offered the more probable explanation of causation, we discern no error regardless of whether Dr. Haslam's opinion was entitled to a presumption of correctness. *See Johnson v. Inspire Brands d/b/a Blazin Wings, Inc.*, No. 2020-08-0731, 2022 TN Wrk. Comp. App. Bd. LEXIS 35, at *26-

27 (Tenn. Workers' Comp. App. Bd. Sept. 7, 2022). We therefore find no abuse of discretion in the trial court's assessment of the expert medical proof, and, as such, Employer's other issues concerning whether the trial court improperly shifted the burden of proof and whether it erred in not defining Employee's "community" are pretermitted.

*Reimbursement of Medical Expenses*

For his part, Employee asks on appeal that we reverse the trial court's denial of his stipulated past medical expenses of $16,222.43. The trial court determined there was no proof the expenses were reasonable and necessary and declined to award the expenses. Employee argues that, as the injury has been determined to be compensable based on Dr. Thomas's testimony, the resulting medical treatment was presumed to be reasonable and necessary, and the burden was on Employer to show otherwise. In support of this contention, Employee cited *Carwile v. Compass Group, U.S.A., Inc., d/b/a Canteen Vending Services*, No. W2001-03163-WC-R3-CV, 2003 Tenn. LEXIS 113 (Tenn. Workers' Comp. Panel Feb. 13, 2013), a pre-reform case issued by the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel. Conversely, Employer argues there is no proof in the record that the expenses were reasonable and necessary and that such proof is required under Tennessee Code Annotated section 50-6-204(a). For the reasons set forth below, we conclude the preponderance of the evidence supports a finding that the stipulated medical expenses were reasonable and necessary and thus reverse that portion of the court's order.

In the joint pre-compensation hearing statement, which did not list the unauthorized medical expenses as a disputed issue, the parties stipulated the "[u]npaid medical expenses *requiring* payment or reimbursement total $16,222.43." (Emphasis added.) At the hearing, the court asked, "the amounts that are documented here, is there any dispute as to whether these are reasonable and necessary charges?" Employer's counsel responded:

> for [Employer's] sake, we stipulated to the number, but all we know is that that is a number in a statement that [Employee] has received. We have nothing beyond that as to the reasonable appropriateness, or whether, you know, [they were] medically necessary. I can't stipulate to that or say anything in that regard.

Employee's counsel did not respond to the court's inquiry or the statement of Employer's counsel, and no further discussion was had regarding the reasonableness and necessity of the medical expenses at the hearing, including in closing arguments. The medical bills had previously been admitted as an exhibit by stipulation.[1]

---

[1] At the beginning of the compensation hearing, the court stated, "And then we also have [Employee's] exhibits, Notice of Filing Exhibits . . . notice [of] Optima Medical payments made and unpaid medical bills. Any objection, Mr. Franklyn?" Mr. Franklyn responded, "No objection, Your Honor." The items were then marked Exhibit 5. However, later in the hearing when Exhibit 5 was discussed by Employee's counsel,

In considering stipulations, we first note that parties are bound by the oral statements and agreements made by their attorneys in open court. *Prater v. Louisville & N. R. Co.*, 462 S.W.2d 514, 519 (Tenn. Ct. App. 1970). As noted by the Tennessee Court of Appeals:

> [l]awyers are agents and have prima facie authority to speak for their client through pleadings and negotiations. [A] letter from counsel about a matter under his supervision is an admission of an agent within the scope of his authority . . . . [An] admission [is] not conclusive, but subject to explanation or even denial. It [is], however, incumbent upon [the litigant] to explain or contradict this evidence in order to escape its effect. No such effort was made by [the litigant].

*Simmons v. O'Charley's*, 914 S.W.2d 895, 902 (Tenn. Ct. App. 1995). We previously examined stipulations in *DeMotte v. United Parcel Service, Inc.*, No. 2017-06-1778, 2018 TN Wrk. Comp. App. Bd. LEXIS 38 (Tenn. Workers' Comp. App. Bd. Aug. 13, 2018). In that case, the employer identified no evidentiary disputes in the pre-compensation hearing statement and also submitted a brief stating it had not contested the assigned impairment rating. *Id.* at *3-4. However, at trial, the employer contested the admission of a medical form documenting the impairment rating, arguing it was inadmissible to the extent it was being offered to substantiate the permanent impairment rating. *Id.* at *4. The trial court agreed, despite the employer's attorney's reiteration in open court that there was not a dispute about the rating. *Id.* at *4-5. On appeal, we reversed and remanded for purposes of determining the rating based on the stipulations of counsel prior to the hearing and in open court. *Id.* at *9-10.

Similarly, there are no filings in this record indicating a dispute over the reasonableness and necessity of the unauthorized medical bills prior to the compensation hearing. It is not listed as a contested issue at any point, nor was it raised as an issue at the compensation hearing in any conversation other than the one cited above. The amount of medical bills "requiring payment or reimbursement" was also stipulated by the parties. However, in some contrast with *DeMotte*, Employer's counsel in this case did attempt to clarify during the hearing that, while Employer had stipulated to the amount of the unpaid medical bills and the "requirement" to reimburse if Employee's claim were deemed compensable, it had not stipulated to the reasonableness and necessity of the medical bills.

The trial court found that "[i]t was reasonable for [Employee] to pursue another opinion and . . . [he] was justified in seeking treatment on his own." Despite this determination, however, it declined to award the medical expenses, relying on *Mollica v. EHHI Holdings, Inc.*, No. 2018-01-0702, 2020 TN Wrk. Comp. App. Bd. LEXIS 22, at *7 (Tenn. Workers' Comp. App. Bd. Apr. 21, 2020). In *Mollica*, the trial court awarded

---

Employer's counsel stated, "Same as before, your Honor." The Court then stated, "[I]t's an admitted record."

7

certain out-of-pocket expenses claimed by the employee once it determined she was entitled to medical treatment. *Id.* at *4. On appeal, we reversed, noting the employee had offered no medical records into evidence and no proof, other than the employee's own testimony, that the bills were reasonable, necessary, and causally related to the work injury. *Id.* at *7. We do not find that case to be persuasive here, as we have more than Employee's testimony addressing the reasonableness and necessity of the unpaid medical expenses.

As a general principle, we agree with Employer that, in most circumstances, an injured employee who seeks medical care from a physician of his or her own choosing has the burden of proving by a preponderance of the evidence that the claimed medical expenses were both reasonable and necessary. An equally important principle, however, is that an employer who denies a claim runs the risk it will be held responsible for medical benefits obtained from a medical provider of the employee's choice. *See, e.g.*, *Parker v. Ryder Truck Lines, Inc.*, 591 S.W.2d 755 (Tenn. 1979); *Hagan v. Potomac Corp.*, No. 2021-04-0105, 2022 TN Wrk. Comp. App. Bd. LEXIS 5, at *10 (Tenn. Workers' Comp. App. Bd. Feb. 9, 2022). *Hagan* is similar to the case at hand in that the treating physician, selected from a panel, determined the employee's rotator cuff tear to be degenerative in nature and not primarily related to the work accident. *Id.* at *3. The trial court, in a decision on the record, determined the employee's expert had overcome the rebuttable presumption of correctness afforded the treating physician under Tennessee Code Annotated section 50-6-204(a)(3)(A) and found his opinion that the tear was primarily related to the work accident to be more credible. It also awarded past medical benefits. *Id.* at *4. We affirmed, stating, "[w]hether an employer who denies an employee's claim is obligated to reimburse or pay medical expenses the employee incurs from unauthorized providers depends on the facts and circumstances of the case." *Id.* at *9-10.

Given the totality of the evidence and the particular circumstances of this case, we hold that Employee met his burden of proving by the preponderance of the evidence that it was reasonable for him to seek unauthorized treatment and, based on the evidence submitted to the court, that the claimed medical expenses were reasonable and necessary. First, unlike in *Mollica*, we have in the present case the completed C-32 and medical records of Dr. Thomas, stating that the injury resulted in the need for medical treatment. Second, we have Dr. Thomas's deposition, in which he stated the surgery was necessary due to an "acute on chronic injury, i.e., . . . [the] torn labrum . . . [occurring from] the overhead activity." Third, Dr. Price stated in his deposition that the treatment Dr. Thomas provided was "not inappropriate." Fourth, the parties stipulated to the amount of medical expenses "requiring payment or reimbursement" in the event the trial court found the claim compensable. Fifth, the bills related to Dr. Thomas's treatment were admitted without objection.

In short, Employee submitted evidence that the treatment he sought from Dr. Thomas was reasonably necessary and was medically appropriate. The parties stipulated to the amount of medical expenses "requiring reimbursement" if the claim were found

compensable, and Employer did not object to the introduction of those bills. Moreover, Employer has offered no proof that the medical treatment provided by Dr. Thomas was not reasonable or necessary, and we can find no evidence of that in the three medical depositions included in this record. Finally, Employee's testimony, which the trial court found to be credible, evidences his improvement following his treatment by Dr. Thomas. In other words, we conclude there is "ample proof in the record" that the unauthorized medical expenses were both reasonable and necessary. *Shadden v. ITT Hartford Ins. Co.*, No. 01S01-9607-CH-00148, 1997 Tenn. LEXIS 258, at *7 (Tenn. Workers' Comp. Panel May 13, 1997) (allowing for an award of medical expenses even though the employee had not listed all of the expenses in his discovery responses). As such, we reverse the court's ruling that Employee is not entitled to reimbursement of the stipulated medical expenses.[2]

## Conclusion

For the foregoing reasons, we affirm the trial court's award of disability benefits and causally-related reasonable and necessary medical benefits in the future. We reverse the court's order denying the reimbursement of past medical expenses, modify the compensation order to award the stipulated amount, and certify the modified compensation order as final. Costs on appeal are taxed to Employer.

---

[2] The *Carwile* case, cited by Employee, shifted the burden to the employer to prove the unauthorized medical expenses are not reasonable and necessary, reasoning that the employer's denial of the claim from the outset and refusal to provide medical treatment resulted in its implicit acceptance of the reasonableness and necessity of such treatment. *Carwile*, 2003 Tenn. LEXIS 113, at *4-5. The court further stated, "To hold otherwise would effectively reward the employer for failing to fulfill a statutory requirement." *Id*. We find it unnecessary to evaluate whether the burden shifted in the instant case, as it is our determination Employee met his burden to prove the reasonableness and necessity of the medical expenses through the evidence submitted when considered in light of the stipulation.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Michael Lentz | ) | Docket No. 2021-05-0570 |
| | ) | |
| v. | ) | State File No. 54706-2020 |
| | ) | |
| Coca-Cola Consolidated, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Dale A. Tipps, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's order in the referenced case was sent to the following recipients by the following methods of service on this the 19th day of July, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Garett P. Franklyn | | | | X | gpfranklyn@mijs.com abhaley@mijs.com |
| Christopher Kim Thompson | | | | X | kim@thompsonslawoffice.com |
| Dale A. Tipps, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov